UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| CONVERGYS INFORMATION | : | Civil Action No. C-1-01-618 |
| MANAGEMENT GROUP, INC., | : | |
| et al., | : | Magistrate Hogan |
| | : | |
| Plaintiffs, | : | DEFENDANTS' MOTION *IN* |
| | : | *LIMINE* REGARDING CERTAIN |
| v. | : | NOTES PREPARED BY |
| | : | CONVERGYS EMPLOYEE BILL |
| IGATE CAPITAL ORPORATION, | : | KOOPMANS WITH |
| et al., | : | MEMORANDUM IN SUPPORT |
| | : | |
| Defendants. | : | |

Despite requests by defendants, plaintiff Convergys Information Management Group, Inc. ("Convergys") has refused to produce a copy of certain handwritten notes prepared by Bill Koopmans ("Koopmans"), a Convergys employee, that purportedly summarize many of the events of September 17, 1999, on which plaintiffs' Second Amended Complaint is based and Koopmans' discussions with Ragesh Rao ("Rao"), an employee of defendant Mastech Systems Corporation ("Mastech"), regarding those events for the period from September 17, 1999 until Mr. Rao's services were terminated on September 21, 1999. Convergys is clearly obligated to produce the notes prepared by Koopmans and has offered no legally justifiable basis for its non-disclosure. Furthermore, without the notes in question, it will be extremely difficult for defendants to fully and fairly defend themselves against the claims being made against them in this litigation. As such, Convergys should be ordered by this Court to immediately produce the notes prepared by Koopmans and should it fail or refuse to do so, it should be precluded from offering any testimony by Koopmans concerning the events of September 17, 1999 - September 21, 1999, or his alleged discussions with Rao during that time period concerning those events.

Respectfully submitted,


   /s/ Jacqueline Schuster Hobbs
Donald J. Mooney, Jr. (0014202)
Jacqueline Schuster Hobbs (0068236)
ULMER & BERNE LLP
600 Vine Street, Suite 2800
Cincinnati, Ohio 45202
(513) 698-5000
(513) 698-5001 (Fax)
dmooney@ulmer.com
jhobbs@ulmer.com


OF COUNSEL:

Kevin P. Lucas, Esq.
Pa. I.D. No. 25596
Robert J. Williams, Esq.
Pa. I.D. No. 76139
MANION McDONOUGH & LUCAS, P.C.
Firm I.D. No. 786
600 Grant Street, Suite 1414
Pittsburgh, Pennsylvania  15219
(412) 232-0200

Attorneys for Defendants

MEMORANDUM

I.  INTRODUCTION

    A.  Background.

Convergys provides customer care and billing services for, *inter alia*, various wireless telephone companies, including Sprint PCS, through computer software systems developed and maintained by Convergys.  To assist it in providing those services, which include computer programming and database management, Convergys uses personnel supplied by outside service providers.  (Plaintiffs' Second Amended Complaint, ¶¶ 1, 7, 8).  Defendant iGate Corporation[1] ("iGate") is a parent company and owner of several wholly-owned subsidiaries that provide information technology and electronic commerce services to large and medium-sized businesses throughout the world.  Mastech is one of iGate's subsidiaries.  It provides computer consulting services, including on-site personnel to perform those services, to various business organizations.  Mastech Services Corporation ("Mastech") provided such services to Convergys.  (Defendants' Answer to Plaintiffs' Second Amended Complaint, ¶¶ 3, 4, 8).

This lawsuit arises out of certain work performed for Convergys by Rao, a Mastech employee, on September 17, 1999.  (*See generally* Plaintiffs' Second Amended Complaint).  On that date, it is alleged that Rao inadvertently corrupted certain database files containing Sprint PCS billing information.  (Plaintiffs' Second Amended Complaint, ¶¶ 12, 14).  Koopmans was the Convergys manager who dealt directly with Rao concerning the corruption of those database files and Rao's supposed "cover-up" of what had occurred, as well as the termination of Rao's services on September 21, 1999.  (Deposition Transcript of William P.

---

[1]  iGate was formerly known as iGate Capital Corporation and prior to that, as Mastech Corporation.  (Defendants' Answer to Plaintiffs' Second Amended Complaint, ¶ 3).

Koopmans ("Koopmans Depo."), p. 146; *see also* Plaintiffs' Second Amended Complaint, ¶¶ 13-15).[2]

      B.  Koopmans Prepared Handwritten Notes Containing a Factual Summary of the <u>Events of September 17, 1999</u>.

      Sometime between September 20, 1999, and September 23, 1999, Koopmans prepared two pages of handwritten notes (the "Notes") that represented his record of the factual events relating to September 17, 1999, based upon his recollection at the time he prepared them. (Koopmans Depo., pp. 146-148).[3]  According to Koopmans, the Notes contain no record of or reference to any communications with legal counsel for Convergys.  In addition, at the time he prepared the Notes, he shared them with no one and was not contemplating that Convergys would file some type of claim against Rao or Rao's employer.  (Koopmans Depo., pp. 147, 151-152).[4]  Instead, Koopmans placed the Notes in a work file of documents relating to the events of September 17, 1999, which he kept in his office for reference.  (Koopmans Depo., pp. 140-141).  Koopmans ultimately delivered his work file to Mark Booher ("Booher"), an in-house attorney at Convergys in response to Booher's request to make a copy of it.  Although he could not recall exactly when he delivered his work file to Booher, Koopmans believed it was "somewhere between 2000 and 2002."  (Koopmans Depo., pp. 142-144).

---

[2]  Pursuant to Local Rule 7.2(f), defendants have attached hereto as Exhibit 1 the relevant portions of the deposition transcript of Koopmans.

[3]  As part of Convergys' investigation into the corruption of the Sprint PCS database files, Rao, at Koopmans' request, provided Convergys with two written summaries containing Rao's factual description of the work he performed on September 17, 1999, and the steps he took while performing that work.  During the course of discovery, Convergys has produced the written summaries prepared by Rao.  Yet, as explained in further detail below, it has refused to produce the Notes prepared by Koopmans.

[4]  During his deposition, Koopmans was also asked whether he delivered the Notes at the time he created them to legal counsel as part of requesting legal advice.  Although Convergys' counsel objected to the question and Koopmans did answer it, Convergys' counsel indicated on the record that Koopmans did not deliver the Notes at the time of their creation as part of requesting advice.  (Koopmans Depo., p. 149).

C. Convergys has Refused to Produce Koopmans' Notes on the Grounds that they <u>are Privileged</u>.

During the course of discovery, defendants requested from Convergys copies of documents pertaining to the events of September 17, 1999, including the Notes prepared by Koopmans and his work file. Initially, Convergys claimed that it could not locate certain documents, among them Koopmans' Notes and his work file, as they had somehow been misplaced. (*See* Convergys' Answer to Request for Admission No. 20 attached hereto as Exhibit 2).[5] Later, Convergys apparently recovered those items and by letter dated February 10, 2004, it produced, without objection, a copy of Koopmans' work file. However, it withheld the Notes he prepared that were contained in that file asserting they were "privileged" since they were created at the suggestion of Convergys' in-house legal counsel.[6] Aside from its blanket assertion of privilege, Convergys has offered no further explanation for its non-disclosure of the Notes or identified the precise basis ? attorney-client privilege or work product doctrine ? upon which it relies for it. (*See* Exhibit 3 attached hereto).

II. <u>LAW AND ARGUMENT</u>

The burden of establishing the existence of a privilege rests with the party asserting it. *See U.S. v. Dakota*, 197 F.3d 821, 825 (6th Cir. 2000). Regardless of whether Convergys premises its privilege argument upon the attorney-client privilege or the work product doctrine, it cannot demonstrate that either theory applies to the Notes and protects them from disclosure in this litigation.

---

[5]  As required by Local Rule 7.2(f), defendants have attached hereto only the relevant portions of Convergys' Answers to defendants' First Requests for Admissions.

[6]  A copy of the letter dated February 10, 2004, from Convergys' counsel is attached hereto as Exhibit 3.

A. The Notes are not Exempt from Disclosure under the Attorney-Client Privilege as they do not Constitute or Reference "Communications" with Legal Counsel.

The attorney-client privilege is implicated only "(1) [w]here legal advice of any kind is sought (2) from a professional legal adviser in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence, (5) by the client, (6) are at his instance permanently protected, (7) from disclosure by himself or the legal adviser, (8) except the protection may be waived." *U.S. v. Goldfarb*, 328 F.2d 280, 281 (6th Cir. 1964), *cert. denied*, 377 U.S. 976, 84 S.Ct. 1883. As "an exception to the rule requiring full disclosure," the attorney-client privilege is to be narrowly construed. *Id*. at 282; *U.S. v. Collis*, 128 F.3d 313, 320 (6th Cir. 1997). It only applies "where necessary to achieve its purpose and protects only those communications necessary to obtain legal advice." *In re Antitrust Grand Jury*, 805 F.2d 155, 162 (6th Cir. 1986)(*citing Fisher v. U.S*., 425 U.S. 391, 403, 96 S.Ct. 1569, 1577 (1975)).

The United States Supreme Court left little doubt about the scope of the attorney-client privilege in *Upjohn v. U.S*., 449 U.S. 383, 395, 101 S.Ct. 677, 685 (1981). As the Court aptly noted,

> The protection of the privilege extends only to *communications* and not to facts. A fact is one thing and a communication concerning that fact is an entirely different thing. The client cannot be compelled to answer the question, 'What did you say or write to the attorney?' but may not refuse to disclose any relevant fact within his knowledge merely because he incorporated a statement of such fact into his communication to his attorney.

*Id*. at 395-396 (*citing Philadelphia v. Westinghouse Elec. Corp*., 205 F.Supp. 830, 831 (E.D. Pa. 1962)).

Koopmans' testimony alone regarding the Notes and their contents is fatal to any claim by Convergys that they are protected from disclosure by the attorney-client privilege. According to Koopmans himself, the Notes contain no record of or reference to any communications with counsel for Convergys. Indeed, Koopmans admitted that they were essentially a contemporaneous recording of the factual events relating to September 17, 1999,

which Koopmans placed in his work file for his reference. Koopmans shared the Notes with no one when he created them and in fact, did not even provide them to in-house counsel for Convergys until "sometime between 2000 and 2002" and only in response to a request for his work file so that copies of it could be made.

Even if, as Convergys suggests, Koopmans somehow prepared the Notes at the recommendation of its in-house counsel, it does not alter their non-privileged status. Quite simply, the Notes are a recording of factual events and not a "communication" with counsel. Convergys cannot withhold those facts merely because it conveyed them to its counsel. *See Upjohn*, 449 U.S. at 396 (*citing Dudek v. Circuit Court*, 34 Wis.2d 559, 580, 150 N.W.2d 387, 399 (1967)).

B. The Work Product Doctrine does not Exempt the Notes from Disclosure as they were not Prepared in Anticipation of Litigation.

The work product doctrine is codified in Rule 26 of the Federal Rules of Civil Procedure. "In order for the work product doctrine to apply, the materials in question must be (1) documents or other tangible things; (2) prepared in anticipation of litigation or for trial; (3) by or for a party or that party's representative." *Guy v. United Health Care Corp.*, 154 F.R.D. 172, 181 (S.D. Ohio 1993). "Although the doctrine extends to materials prepared before litigation actually commences, the scope of the protection is limited to that time in which a real and substantial possibility of litigation exists." *Id.*

Moreover, while broader in its reach than the attorney-client privilege,[7] the work product doctrine is not without its boundaries. In the course of delineating the doctrine in *Hickman v. Taylor*, the United States Supreme Court specifically held that

We do not mean to say that all written materials obtained or prepared by an adversary's counsel with an eye toward litigation are necessarily free from

---

[7] *See In re Antitrust Grand Jury*, 805 F.2d at 163.

> discovery in all cases. Where relevant and non-privileged facts remain hidden in an attorney's file and where production of those facts is essential to the preparation of one's case, discovery may properly be had. Such written statements and documents might, under certain circumstances, be admissible in evidence or gives clues as to the existence or location of relevant facts. Or they might be useful for purposes of impeachment or corroboration.

329 U.S. 495, 511, 67 S.Ct. 385, 394 (1947).

Analysis of Koopmans' Notes under the work product doctrine yields the same result as the one performed with respect to the attorney-client privilege ? it does not apply or exempt the Notes from disclosure. As an initial matter, Convergys cannot overcome the significant time span between Koopmans' creation of the Notes and the filing of this lawsuit. Although Koopmans prepared the Notes between September 20, 1999, and September 23, 1999, Convergys did not initiate this lawsuit until September 14, 2001, almost two years later. On this basis alone, the Notes clearly fall outside the "scope of the protection" offered by the work product doctrine.

Equally compelling is Koopmans' own testimony on the topic. By his own admission, he was not contemplating that Convergys would be filing a claim against Rao or Rao's employer when he prepared the Notes. The time span between Koopmans' creation of the Notes and his delivery of them to Convergys' in-house counsel only supports the conclusion they are not protected by the work product doctrine. According to Koopmans, he did not share the Notes or deliver them to anyone when he created them and merely placed them in his work file. Indeed, the earliest that Koopmans may have delivered the Notes to Convergys' in-house counsel was three and one-half months after their creation. However, he admitted that it could have been as long as approximately three and one-half years. (Koopmans Depo., p. 148).

In any event, the application of the work product doctrine to the Notes in question runs contrary to the principles espoused by the Supreme Court in *Hickman*. In fact, the Notes are precisely what the Supreme Court had in mind when it defined the documents that would fall

outside its domain. Having dealt first-hand with Rao regarding the database corruption on September 17, 1999, and Rao's alleged "cover-up" of what occurred, Koopmans is clearly a material witness to this litigation. The Notes he prepared and placed in his work file that recorded the factual events relating to that corruption and Rao's purported "cover-up" are a relevant and critical piece of evidence without which defendants will be prejudiced in their defense. At the very least, the Notes will be "useful for purposes of impeachment or corroboration" of Koopmans' deposition testimony concerning those events and are "essential to the preparation of [defendants'] case." *See Hickman*, 329 U.S. at 511. As such, Convergys should not be permitted to withhold them based upon its mistaken belief that they are somehow "privileged."

      C. Convergys Should be Required to Produce the Notes Immediately or be Prohibited from Offering Testimony by Koopmans Regarding the Events of <u>September 17, 1999</u>.

Defendants' counsel has conferred in good faith with counsel for Convergys in an attempt to secure the disclosure of the Notes prepared by Koopmans without intervention by this Court. Those attempts, which included discussions with Convergys' counsel on the record at Koopmans' deposition, have been to no avail. (Koopmans' Depo., pp. 150-151, 152-153; *see also* Affidavit of Jacqueline Schuster Hobbs attached hereto as Exhibit 4). Moreover, as demonstrated above, defendants are legally entitled to the Notes and Convergys should be required to produce them. To that end, defendants ask that the Court issue an Order directing Convergys to do so immediately, and in any event, no later than three days after entry of the Court's Order. Defendants also ask that the Court expressly indicate in its Order that should Convergys fail or refuse to produce the Notes as ordered, it will be precluded from offering any

testimony by Koopmans concerning the events of September 17, 1999 - September 21, 1999, or his alleged discussions with Rao during that time period concerning those events.[8]

Respectfully submitted,


__/s/ Jacqueline Schuster Hobbs_____
Donald J. Mooney, Jr. (0014202)
Jacqueline Schuster Hobbs (0068236)
ULMER & BERNE LLP
600 Vine Street, Suite 2800
Cincinnati, Ohio 45202
(513) 698-5000
(513) 698-5001 (Fax)
dmooney@ulmer.com
jhobbs@ulmer.com


OF COUNSEL:

Kevin P. Lucas, Esq.
Pa. I.D. No. 25596
Robert J. Williams, Esq.
Pa. I.D. No. 76139
MANION McDONOUGH & LUCAS, P.C.
Firm I.D. No. 786
600 Grant Street, Suite 1414
Pittsburgh, Pennsylvania  15219
(412) 232-0200

Attorneys for Defendants

---

[8] Rule 37(a)(2) of the Federal Rules of Civil Procedure provides the Court with authority to compel Convergys to produce the Notes that it has thus far refused to produce to defendants.  Fed. R. Civ. P. 37(a)(2)(B).  Rule 37(b)(2) allows the Court to exclude the requested testimony should Convergys fail or refuse to abide by an Order entered by the Court directing Convergys to produce the Notes.  Fed. R. Civ. P. 37(b)(2)(B).

<u>CERTIFICATE OF SERVICE</u>

     The undersigned certifies that a copy of the foregoing was filed electronically with the Court and served electronically upon Grant S. Cowan, Esq., Robert D. Shank, Esq., Frost Brown Todd LLC, Attorneys for Plaintiffs, 2200 PNC Center, 201 East Fifth Street, Cincinnati, Ohio 45202-4182, this 23rd day of March, 2004.

                    /s/ Jacqueline Schuster Hobbs