# EXHIBIT 1 TO DEFENDANTS' MOTION *IN LIMINE* REGARDING BILL KOOPMANS' NOTES


EXHIBIT

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

CONVERGYS INFORMATION              :
MANAGEMENT GROUP, INC.,            :
AND CHUBB CUSTOM                   :
INSURANCE COMPANY,                 :

    Plaintiffs                    :

    -v-                           :   Case No. CV-01-618
                                      :   (Judge Beckwith)

IGATE CORPORATION, et al.,         :

    Defendants                    :

- 0 -

    The deposition of **WILLIAM P. KOOPMANS**, taken before Melea E. Chaney, Court Reporter and Notary Public in and for the State of Ohio, at the law offices of Ulmer & Berne, 600 Vine Street, Suite 2800, Cincinnati, Ohio, on the 12th day of February, 2004, beginning at the hour of 9:23 a.m. and ending at the hour of 6:09 p.m. of the same date.

- 0 -

**RIVERSIDE REPORTING**
Certified Court Reporters
P.O. Box 949
Covington, Kentucky 41012
KY(859)291-6110
OH(513)574-7017

COPY

                                                              2

APPEARANCES:

FOR THE PLAINTIFFS:    ROBERT D. SHANK, Esq.
                       Attorney at Law
                       2200 PNC Center
                       201 East Fifth Street
                       Cincinnati, Ohio  45202

                       ROSS A. WRIGHT, Esq.
                       Attorney at Law
                       201 East Fourth Street
                       102-1800
                       Cincinnati, Ohio  45202


FOR THE DEFENDANTS:    KEVIN P. LUCAS, Esq.
                       Attorney at Law
                       USX Tower, Suite 1414
                       600 Grant Street
                       Pittsburgh, Pennsylvania  15219


ALSO PRESENT:          MR. DANIEL DAUGHERTY, Esq.


                        - 0 -

                     STIPULATIONS:

        It is stipulated by and between counsel for the respective parties that the deposition of **WILLIAM P. KOOPMANS**, a witness herein, may be taken at this time pursuant to the Federal Rules of Civil Procedure and Notice; that the deposition may be taken via Stenomask by the Notary Public/Court Reporter, and transcribed by her out of the presence of the witness; that the deposition was submitted to counsel for the witness for reading and signature.

                        - 0 -

CONVERGYS vs. IGATE CORPORATION, et al.
William P. Koopmans
February 12, 2004

PAGE 138

1  Q  I'm sorry -- how you started to deal
2  with her on these matters like the week after, give or
3  take, the week following the September 17th incident.
4  So I would like to start by -- I'd like to show you a
5  document that was produced within the past day or so by
6  Convergys and ask you -- and just mark it as a single
7  document or maybe I can do this with your counsel.
8  That may be easier.
9      Among the documents that were here when
10 I arrived for your deposition today that had been
11 delivered yesterday is a series of documents that bear
12 the numbers 10838 through 10919. I had received
13 electronically yesterday from Mr. Shank, together with
14 his February 10, 2004 letter, what appears to be at
15 least somewhat the same series of documents, but it
16 wasn't Bates stamped, so I can't tell for sure.
17     So we can go through and I can ask you
18 some questions, I'm putting out in front of you and
19 your counsel right now the document that was included
20 with Mr. Shank's February 11, 2004 letter to Attorney
21 Hobbs. And I'm also going to put out before you a
22 February 10, 2004 letter from Mr. Shank to me that was
23 sent electronically and it was not stamped with the
24 little numbers on the bottom, but what we did was just
25 handwrite numbers just sequentially so we can refer to

PAGE 139

1  different pages. You'll see down in the right-hand
2  corner one, two, three, four and that type of thing.
3      Maybe I could get clarification from
4  you or Mr. Shank as to what it is these two files are.
5  Perhaps to do this in an organized fashion, let's start
6  first with this document, which let's mark it with the
7  next number, please. This will be Exhibit Number 6.
8      MR. SHANK: What's the question, Kevin?
9  BY MR. LUCAS:
10    Q  Well, let me first ask what this is.
11 The letter says this is the Koopmans file which was
12 located in the legal department and that it is that
13 file in its entirety with the exception of two pages of
14 handwritten notes by Mr. Koopmans.
15     So just so I know on the record, that
16 document that's now been marked as Exhibit 6, is that,
17 in fact, what that file is?
18     MR. SHANK: Let me take a stab at
19     answering that question. The answer to your
20     question is yes, that is what the file is.
21     Well, let's just take it question by question,
22     but, yes, that is what the file is.
23 BY MR. LUCAS:
24    Q  Well, then let me ask the separate one,
25 if I can do that then. I'll leave these all in order.

PAGE 140

1  That is: Then would the pile of documents that were
2  delivered to Ms. Hobbs yesterday, which I have sitting
3  in front of me, is the same file somewhere in here?
4      MR. SHANK: Yes. Yes. And maybe this
5      will clear it up, Kevin. For the record, and I
6      think you should have these documents, the file
7      that's in front of the witness, Exhibit 6, has
8      also been Bates numbered and produced to Ms.
9      Hobbs as Bates numbers 10838 through 10903.
10 BY MR. LUCAS:
11    Q  Okay. Well, then we'll deal with
12 Exhibit 6 because that's the version that I had in
13 advance, Mr. Koopmans. I would ask you to take a look
14 at this. Are you familiar with this collection of
15 documents?
16    A  Yes.
17    Q  And do I correctly understand that this
18 is a file or these are documents which you maintained
19 in a file?
20    A  That is correct.
21    Q  And during what period of time did you
22 create this file?
23    A  This is a -- a file of documentation
24 that I had associated with the September 17th event.
25    Q  And are you the person who decided what

PAGE 141

1  was included in this file?
2    A  Yes.
3    Q  Was this your work file?
4    A  Yes.
5    Q  And so this is a file that you
6  maintained when, from on or about September 17th?
7    A  Correct.
8    Q  Until when?
9    A  I think -- I mean, most of this stuff
10 is probably within a month or two of the event in terms
11 of new contribution to the file.
12    Q  When I say or you say this is your work
13 file, these would be things that you did, documents
14 that you wanted to have available for your reference as
15 part of your normal activities; is that correct?
16    A  Correct.
17    Q  Did you have physical possession of
18 this file?
19    A  Yes.
20    Q  And was it a file?
21    A  Yes. It was a hanging folder.
22    Q  In like a file cabinet?
23    A  Correct.
24    Q  In your office?
25    A  Yes.

CONVERGYS vs. IGATE CORPORATION, et al.
William P. Koopmans
February 12, 2004

PAGE 142

1  Q    Now, at some point in time this file
2  was delivered to the legal department; is that correct?
3  A    That is correct.
4  Q    To whom in the legal department did you
5  deliver it?
6  A    That would have been Mark Booher.
7  Q    How do you spell his last name?
8  A    B-O-O-H-E-R, I believe.
9  Q    And who is Mr. Booher?
10 A    He was Convergys legal.
11 Q    Is he still a Convergys employee?
12 A    I'm not sure. I haven't heard --
13      MR. SHANK: He is not.
14 BY MR. LUCAS:
15 Q    And when did you deliver this file,
16 this collection of documents, to him?
17 A    I have no idea.
18 Q    Well, let's see if we can come up with
19 at least some approximate idea. You would have
20 maintained this in your office, according to your
21 recollection, for a month -- I mean, it would have
22 contained documents for a month or two, so you would
23 have maintained it for at least a month or two,
24 correct?
25 A    I -- I can narrow it down to somewhere

PAGE 143

1  between 2000 and 2002.
2  Q    So is it fair to say at the absolute
3  minimum you would have maintained this file for three
4  and a half months?
5  A    Yes.
6  Q    Probably somewhere between three and a
7  half months and 40 months?
8  A    Yes.
9  Q    Why did you deliver it to Mr. Booher?
10      MR. SHANK: Objection. I think you're
11 getting a little close. I don't want you to
12 tell him anything about what Mr. Booher may
13 have told you. For the record, Mr. Booher was
14 in-house legal counsel at Convergys and was
15 acting as legal counsel for Convergys on this
16 particular matter. So if you can answer Mr.
17 Lucas' question without telling him anything
18 that you and Mr. Booher talked about, then you
19 can answer the question.
20      THE WITNESS: So can you repeat the
21 question?
22 BY MR. LUCAS:
23 Q    Why did you deliver this collection of
24 documents to Mr. Booher when you delivered it?
25      MR. SHANK: And just so I'm clear, the

PAGE 144

1  same instruction would apply to communications
2  between you and any of Convergys' in-house
3  legal attorneys. So, again, if you can answer
4  that questions without disclosing those
5  communications, you can answer the question.
6      THE WITNESS: Okay. He asked for the
7  file in order to make copies.
8  BY MR. LUCAS:
9  Q    And so you delivered it to him?
10      MR. SHANK: That's okay.
11      MR. LUCAS: Correct?
12      THE WITNESS: Mm-hmm. Mm-hmm.
13 BY MR. LUCAS:
14 Q    Now, in this file, according to the
15 cover letter, there was two pages of handwritten notes
16 prepared by you.
17 A    Correct.
18 Q    Is that correct?
19 A    That's correct.
20 Q    When was the last time you saw the
21 handwritten notes?
22      MR. SHANK: Can you clarify your
23 question, Kevin? And tell me if you're not
24 willing to do this, can you ask him -- are you
25 asking him when was the last time he physically

PAGE 145

1  saw the piece of paper or when was the last
2  time he actually read the notes?
3      MR. LUCAS: Well, I guess I would ask
4  both.
5  BY MR. LUCAS:
6  Q    I mean, when was the last time you
7  actually saw the two pages that contained handwritten
8  notes of yours?
9  A    At a distance I saw the pages in the
10 last month.
11 Q    And when was the last time that you
12 actually read your notes?
13 A    That would have been sometime between
14 September 17th and when the file was given to Mr.
15 Booher.
16 Q    The actual handwritten notes
17 themselves, when did you prepare them?
18 A    It was sometime -- as I recall, it was
19 sometime late in the week of September 20th.
20 Q    Now, let me go through because we don't
21 have a calendar and I just want to make sure that I
22 understand. September 17th, 1999 is the date of the
23 database corruption event, correct?
24 A    That is correct.
25 Q    That was a Friday?

CONVERGYS vs. IGATE CORPORATION, et al.
William P. Koopmans
February 12, 2004

PAGE 146

```
 1       A       Correct.
 2       Q       Monday was the 20th; is that correct?
 3       A       Correct.
 4       Q       And Tuesday the 21st was the day that
 5   Mr. Rao's services were terminated. Is that consistent
 6   with your recollection?
 7       A       That sounds right.
 8       Q       Using those dates as a reference, when
 9   did you prepare the two pages of notes?
10       A       It was likely somewhere then between
11   the 20th and the 23rd.
12       Q       Do you recall whether you prepared
13   these notes all at once or was it a collection of
14   updated handwritten entries?
15       A       It may have been -- I can't recall
16   precisely. It may have been one or two entries. You
17   know, I might have stopped and then continued where I
18   had left off.
19       Q       Do you recall whether you started
20   making any notes here or made any of these notes prior
21   to the time that Mr. Rao's services were terminated?
22       A       I believe that I started -- I believe I
23   started after.
24       Q       Why did you prepare these notes?
25               THE WITNESS: Can I answer that?
```

PAGE 147

```
 1               MR. SHANK: You can answer that as long
 2   as it does not disclose any communications
 3   between you and Convergys' in-house legal
 4   counsel. So if you can answer the question
 5   without disclosing those communications, yes.
 6               THE WITNESS: Well, I don't know if
 7   that's the case.
 8               MR. SHANK: Can I talk to the witness
 9   on the Convergys issue?
10               MR. LUCAS: Sure.
11               (OFF THE RECORD)
12   BY MR. LUCAS:
13       Q       Mr. Koopmans, you've had a chance to
14   confer with Mr. Shank. Frankly I don't recall what the
15   last pending question is. Let me put a question before
16   you.
17               The notes themselves, what did they
18   record? And by that I mean were you recording factual
19   events, things that happened according to your
20   recollection at the time?
21       A       Yes.
22       Q       Did your notes record any
23   communications that you had with any Convergys
24   attorney?
25       A       Not that I recall.
```

PAGE 148

```
 1       Q       If I understand your testimony, the
 2   notes would have been prepared sometime between the
 3   20th of September and the 23rd of September, correct?
 4       A       Correct.
 5       Q       Did you review those notes with anyone
 6   at that time?
 7               MR. SHANK: When he was preparing the
 8               notes?
 9               MR. LUCAS: Yes.
10               MR. SHANK: Same instruction, Mr.
11               Koopmans.
12               THE WITNESS: No.
13   BY MR. LUCAS:
14       Q       And you retained these notes after you
15   created them in the third week of September 1999 for a
16   minimum of three and a half months and perhaps as long
17   as 40 months, correct?
18       A       Correct.
19       Q       You did not deliver those notes to
20   Convergys attorneys at the time, correct.
21               MR. SHANK: At what time?
22               MR. LUCAS: In the week of 9/20 to 9/23
23               when you prepared them.
24               THE WITNESS: That is correct.
25   BY MR. LUCAS:
```

PAGE 149

```
 1       Q       And you did not deliver those notes at
 2   the time of the 9/20 to 9/23, 1999 creation to an
 3   attorney as part of requesting advice, did you?
 4               MR. SHANK: Objection. He did not
 5               deliver those notes as part of requesting
 6               advice.
 7   BY MR. LUCAS:
 8       Q       At the time these were prepared, you
 9   didn't even communicate them, deliver them, to a
10   Convergys attorney, correct?
11               MR. SHANK: Objection.
12               MR. LUCAS: Well, he's already answered
13               that. He didn't. So the next --
14               MR. SHANK: Well, if he's already
15               answered that then --
16               MR. LUCAS: Well, you didn't understand
17               or you didn't like the phrasing of the
18               question, so I was trying to rephrase it.
19   BY MR. LUCAS:
20       Q       When you prepared these notes during
21   the third week of September of 1999, you maintained
22   them, you kept them and you did not deliver them to any
23   attorney, correct?
24               MR. SHANK: He did not physically
25               deliver them to any attorney. He's already
```

CONVERGYS vs. IGATE CORPORATION, et al.
William P. Koopmans
February 12, 2004

PAGE 150

1  said he hasn't.
2      MR. LUCAS: The witness appears to be
3  thinking. I don't want to cut him off.
4      MR. SHANK: Well, I mean, you're close
5  --
6      THE WITNESS: But I did physically
7  deliver them to Mr. Booher.
8      MR. SHANK: You're close to the
9  privilege line, counsel, so that's why I want
10 to be careful.
11     MR. LUCAS: Well, there's no privilege
12 here and that's what this whole thing is -- I
13 mean, that's what this whole line of
14 questioning is to get at. There is no
15 privilege that's applicable here.
16     MR. SHANK: I --
17 BY MR. LUCAS:
18     Q    You didn't deliver them to Mr. Booher
19 for a minimum of three and a half months and maybe as
20 long as 40 months, correct?
21     MR. SHANK: Again, I'm going to object
22 to the statement that there's no privilege
23 there and that's part of the question that's
24 asked, so I'm going to object to the question
25 as well. What's the question? He's already

PAGE 151

1  said he did not deliver them physically to Mr.
2  Booher for a minimum of three and a half
3  months. He's said that already.
4  BY MR. LUCAS:
5      Q    Did you read them to Mr. Booher during
6  the week of 9/20 to 9/23?
7      A    No.
8      Q    I mean, you made them and you threw
9  them in the file so you could look at them at a later
10 point in time; is that correct?
11     MR. SHANK: Objection. Objection to
12 form.
13     THE WITNESS: I --
14     MR. SHANK: He cannot answer the
15 question why they were made, Kevin. For him to
16 answer the question why they were made would
17 violate the privilege.
18     MR. LUCAS: Well, if he can't answer
19 that question, there can't even be an assertion
20 of privilege. Not only an inadequate assertion
21 of privilege, there can't even be an assertion
22 of the privilege.
23 BY MR. LUCAS:
24     Q    At the time you prepared these notes,
25 were you personally contemplating Convergys filing a

PAGE 152

1  claim against Mr. Rao or Mr. Rao's employer?
2      A    That is not my role.
3      Q    So you weren't; is that correct?
4      MR. SHANK: You can answer that.
5      THE WITNESS: Yes.
6  BY MR. LUCAS:
7      Q    Did you ever tell Mr. Rao or Mr. Rao's
8  employer at the time that you or Convergys was
9  contemplating filing some sort of a claim against one
10 or both of them?
11     A    I can't recall precisely, but I can't
12 imagine I would ever do that.
13     Q    You cannot imagine it; is that what you
14 said?
15     A    That is correct.
16     Q    Did anyone else that you know of within
17 Convergys, such as Mr. Darin Brown, Mr. Ravi Kura, Mr.
18 Neil Hulin, anyone else that was involved, did anyone
19 else prepare notes at the time concerning the events?
20     A    I do not know.
21     Q    Dd Mr. Booher suggest to you or direct
22 to you that you prepare notes of your recollection of
23 the factual events that had taken place?
24     MR. SHANK: Don't answer that question.
25 That is a privileged question.

PAGE 153

1      MR. LUCAS: So you're invoking the
2  privilege and instructing him not to answer
3  that, correct?
4      MR. SHANK: Correct.
5  BY MR. LUCAS:
6      Q    After you prepared the notes, so, I
7  mean, like in this third week of September when you
8  were preparing these notes at that time, what steps did
9  you take or did anyone else at Convergys under your
10 direction or control take to preserve documents at
11 Convergys relating to Mr. Rao's activities?
12     A    I guess none other than to retain
13 everything that was existing.
14     Q    Well, let's talk about that. What did
15 you retain? You retained what was in your folder; is
16 that correct?
17     A    Correct.
18     Q    Did you retain anything else?
19     A    Yes.
20     Q    What else did you retain having to do
21 with this incident?
22     A    Electronic correspondence.
23     Q    And you've turned that over to
24 Convergys' counsel in this lawsuit, correct?
25     A    Yes.

RIVERSIDE REPORTING
KY(859)291-6110    OH(513)574-7017

# EXHIBIT 2 TO DEFENDANTS' MOTION *IN LIMINE* REGARDING BILL KOOPMANS' NOTES

EXHIBIT 2

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| CONVERGYS INFORMATION MANAGEMENT GROUP INC., et al., | Case No.: C-1-01-618 |
| Plaintiffs, | (Judge Beckwith) (Magistrate Judge Sherman) |
| v. | PLAINTIFF CONVERGYS INFORMATION MANAGEMENT GROUP, INC.'S RESPONSES AND OBJECTIONS TO DEFENDANTS' FIRST REQUESTS FOR ADMISSIONS |
| IGATE CORPORATION, et al., | |
| Defendants. | |

Plaintiff Convergys Information Management Group, Inc. ("Convergys") hereby responds to Defendants' First Requests for Admissions (the "Admissions") as follows:

## GENERAL OBJECTIONS

1. Convergys objects to the Admissions to the extent that they seek information subject to the attorney-client privilege, information which constitutes work product and/or information which is not otherwise subject to discovery pursuant to the Federal Rules of Civil Procedure and/or the Local Rules of the United States District Court, Southern District of Ohio.

2. Convergys objects to the Admissions to the extent that they seek to impose obligations upon Convergys which exceed those imposed by the Federal Rules of Civil Procedure.

3. Convergys objects to the Admissions to the extent that they seek information not relevant or material to the subject matter of this action and/or not reasonably calculated to lead to the discovery of admissible evidence in this action.

4. Convergys objects to the Admissions to the extent that they contain vague, ambiguous, conclusory and/or undefined terms.

20.  Convergys cannot identify any of the documents pertaining to the September 17, 1999 incident which it believes its employees may have misplaced.

**RESPONSE:**

Admitted: _____        Denied:  __X__

Answering further, Convergys states that it believes that most, if not all, of the misplaced documents have been recreated and produced by Convergys in this case or are described on the privilege log that has been produced to Defendants' counsel in this case. The only documents Convergys is specifically aware of that could not be reproduced and that have not been produced in this case are Bill Koopmans' handwritten notes of the events.

21.  Convergys presently is not in possession of a copy of the document titled "Data Center & Technology Change Management Process, December, 1998."

**RESPONSE:** Objection. This Request is vague and ambiguous. This Request is also overly broad, unduly burdensome, unreasonable in scope, oppressive and/or requires unreasonable expense. This Request also seeks information not relevant or material to the subject matter of this action and/or not reasonably calculated to lead to the discovery of admissible evidence. In addition, pursuant to Fed. R. Civ. P. 36(a), "[c]opies of documents shall be served with the requests unless they have been or are otherwise furnished or made available for inspection and copying," which was not done in this case.

Without waiving the foregoing objections, and subject to them, Convergys has made a reasonable inquiry and responds as follows:

Admitted:  __X__        Denied: _____

22.  Convergys has not produced to Defendants in this action any copy of the document titled "Data Center & Technology Change Management Process, December, 1998."

**RESPONSE:** Objection. This Request is vague and ambiguous. This Request is also overly broad, unduly burdensome, unreasonable in scope, oppressive and/or requires unreasonable expense. Convergys has produced in excess of ten thousand documents in this case. Defendants' counsel can just as easily review those documents as can Convergys and its counsel to determine whether Convergys produced a document to Defendants entitled "Data Center &

12

|  |  |
|---|---|
| | *[signature]* |
| | Grant S. Cowan (Ohio No. 0029667) |
| | Trial Attorney for Plaintiffs |
| OF COUNSEL: | Convergys Information Management |
| | Group, Inc. and Chubb Custom |
| Robert D. Shank (Ohio No. 0069229) | Insurance Company |
| FROST BROWN TODD LLC | FROST BROWN TODD LLC |
| 2200 PNC Center | 2200 PNC Center |
| 201 East Fifth Street | 201 East Fifth Street |
| Cincinnati, Ohio 45202-4182 | Cincinnati, Ohio 45202-4182 |
| 513-651-6800 | (513) 651-6745 (direct dial) |
| | (513) 651-6981 (facsimile) |

## CERTIFICATE OF SERVICE

This is to certify that a copy of the foregoing Plaintiff Convergys Information Management Group, Inc.'s Responses and Objections to Defendants' First Requests for Admissions has been sent by regular U.S. mail to Donald J. Mooney and Jacqueline Schuster Hobbs, ULMER & BERNE LLP, 2800 Cincinnati Commerce Center, 600 Vine Street, Cincinnati, Ohio 45202-2409 and Kevin P. Lucas and Robert J. Williams, MANION MCDONOUGH & LUCAS, P.C., 600 Grant Street, Suite 1414, Pittsburgh, Pennsylvania 15219 this 10th day of October, 2003.

*[signature]*

CinLibrary/1329523.4

# EXHIBIT 3 TO DEFENDANTS' MOTION *IN LIMINE* REGARDING BILL KOOPMANS' NOTES



**EXHIBIT 3**

# FROST BROWN TODD LLC

2200 PNC Center
201 E. Fifth Street
Cincinnati, Ohio 45202-4182
(513) 651-6800
Facsimile (513) 651-6981
www.frostbrowntodd.com

GRANT S. COWAN
gcowan@fbtlaw.com
(513) 651-6745

February 10, 2004

**BY UPS**

Kevin P. Lucas, Esq.
Manion McDonough & Lucas, P.C.
USX Tower
800 Grant Street, Suite 1414
Pittsburgh, PA 15219

    Re: *Convergys Information Management Group Inc. v. iGate Capital Corporation*

Dear Kevin:

    Per our telephone conversation of today, I am enclosing a copy of the file Bill Koopmans provided to Convergys' legal department, which we thought had been lost. At a meeting today with Bill and others from Convergys, the Koopmans file was located in the legal department's file on this case, apparently having been previously overlooked. I have enclosed a copy of all of the documents in the file, with the exception of two-pages of handwritten notes prepared by Bill Koopmans at the request of a Convergys in-house lawyer. I believe those notes would be privileged, but understand that you may want to question Bill at his deposition concerning the circumstances surrounding the creation of the notes.

                                   Very truly yours,

                                     Grant S. Cowan

GSC/gc
Enclosure

CinLibrary/1366887.1

**EXHIBIT 4 TO DEFENDANTS' MOTION *IN LIMINE* REGARDING BILL KOOPMANS' NOTES**



UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| CONVERGYS INFORMATION MANAGEMENT GROUP, INC., et al., | : : : | Civil Action No. C-1-01-618 |
| | : | Magistrate Hogan |
| Plaintiffs, | : : | |
| v. | : : | AFFIDAVIT OF JACQUELINE SCHUSTER HOBBS IN SUPPORT OF DEFENDANTS' MOTION IN LIMINE REGARDING CERTAIN NOTES PREPARED BY CONVERGYS EMPLOYEE BILL KOOPMANS |
| IGATE CAPITAL ORPORATION, et al., | : : : : : | |
| Defendants. | : | |

STATE OF OHIO      :
                   : SS:
COUNTY OF HAMILTON :

Jacqueline Schuster Hobbs, being duly sworn, deposes and states as follows:

1.  I am local counsel for the defendants in this litigation and make this Affidavit in support of defendants' Motion *in Limine* regarding certain notes prepared by Bill Koopmans, an employee of plaintiff Convergys Information Management Group, Inc. I have personal knowledge of the facts contained in this Affidavit.

2.  On Friday, March 19, 2004, I contacted Robert Shank, one of the attorneys for plaintiffs in this litigation. Mr. Shank confirmed that plaintiffs' position with respect to the notes prepared by Mr. Koopmans had not changed; that is, plaintiffs believe the notes are privileged and not subject to disclosure.

FURTHER AFFIANT SAYETH NAUGHT.

_____
Jacqueline Schuster Hobbs

Sworn to and subscribed before me this 23rd day of March, 2004.

_____
Notary Public

My Commission Expires: _____



ANDREW RAPHAEL GIANNELLA
Attorney at Law
Notary Public, State of Ohio
My Commission Has No Expiration
Section 147.03 R.C.

2