UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| CONVERGYS INFORMATION | : | Civil Action No. C-1-01-618 |
| MANAGEMENT GROUP, INC., | : | |
| et al., | : | Magistrate Hogan |
| | : | |
| Plaintiffs, | : | |
| | : | |
| v. | : | DEFENDANTS' MOTION *IN* |
| | : | *LIMINE* TO PROHIBIT |
| IGATE CAPITAL ORPORATION, | : | PLAINTIFFS FROM OFFERING |
| et al., | : | EXPERT TESTIMONY WITH |
| | : | MEMORANDUM IN SUPPORT |
| Defendants. | : | |

Defendants hereby move this Court *in limine* for an Order prohibiting plaintiffs from offering expert testimony in this litigation. Plaintiffs opted not to identify any expert witnesses, primary or rebuttal, even though expert testimony is essential for plaintiffs to meet their burdens of proof on the various claims being asserted by them, particularly as it pertains to causation, and also elected not to preserve all relevant evidence as to such claims and causation within their exclusive possession and control. Despite that decision, defendants anticipate that plaintiffs may attempt to offer testimony from current and/or former employees of Convergys concerning issues of causation for which expert testimony is required. As explained in the attached Memorandum, plaintiffs cannot and should not be permitted to do so and defendants' Motion *in Limine* must be granted.

Respectfully submitted,


___/s/ Jacqueline Schuster Hobbs_____
Donald J. Mooney, Jr. (0014202)
Jacqueline Schuster Hobbs (0068236)
ULMER & BERNE LLP
600 Vine Street, Suite 2800
Cincinnati, Ohio 45202
(513) 698-5000
(513) 698-5001 (Fax)
dmooney@ulmer.com
jhobbs@ulmer.com

OF COUNSEL:

Kevin P. Lucas, Esq.
Pa. I.D. No. 25596
Robert J. Williams, Esq.
Pa. I.D. No. 76139
MANION McDONOUGH & LUCAS, P.C.
Firm I.D. No. 786
600 Grant Street, Suite 1414
Pittsburgh, Pennsylvania  15219
(412) 232-0200

Attorneys for Defendants

<u>MEMORANDUM</u>

I. <u>INTRODUCTION</u>

    A. <u>The Parties</u>.

        Convergys provides customer care and billing services for, *inter alia*, various wireless telephone companies, including Sprint PCS, through computer software systems developed and maintained by Convergys. To assist it in providing those services, which include computer programming and database management, Convergys uses personnel supplied by outside service providers. (Plaintiffs' Second Amended Complaint, ¶¶ 1, 7, 8). Plaintiff Chubb Customer Insurance Company ("Chubb") provided insurance coverage to Convergys. Plaintiffs assert that Chubb is subrogated to the interests of Convergys in this litigation to the extent of payments made by Chubb to Convergys relating to the events and allegations that form the basis of plaintiffs' Second Amended Complaint. (Plaintiffs' Second Amended Complaint, ¶ 2).

        Defendant iGate Corporation[1] ("iGate") is a parent company and owner of several wholly-owned subsidiaries that provide information technology and electronic commerce services to large and medium-sized businesses throughout the world. Mastech Services Corporation ("Mastech") is one of iGate's subsidiaries. It provides computer consulting services, including on-site personnel to perform those services, to various business organizations. Mastech provided such services to Convergys. (Defendants' Answer to Plaintiffs' Second Amended Complaint, ¶¶ 3, 4, 8).

    B. <u>Plaintiffs' Allegations</u>.

        This lawsuit arises out of certain computer programming work performed for Convergys by Ragesh Rao ("Rao"), a Mastech employee, on September 17, 1999. (*See generally*

---

[1]     iGate was formerly known as iGate Capital Corporation and prior to that, as Mastech Corporation. (Defendants' Answer to Plaintiffs' Second Amended Complaint, ¶ 3).

Plaintiffs' Second Amended Complaint).  Plaintiffs contend that on that date, Rao was pre-creating database files to transfer data from one database to another and in doing so, Rao corrupted certain database files containing Sprint PCS billing information.  (Plaintiffs' Second Amended Complaint, ¶¶ 12, 14).  Plaintiffs contend that Rao "repeatedly represented to Convergys" that he had not worked on or with the corrupted database files and tried to "purposefully hide his mistake from Convergys [ ], by manipulating and changing project logs and other records to conceal his error." (Plaintiffs' Second Amended Complaint, ¶ 14).

Plaintiffs further allege that their "reliance" upon Rao's purported "representations" that he had not worked on or with the corrupted files coupled with his purported attempt to "cover up" his mistake caused Convergys to "expend considerable time and expense in attempting to uncover the cause of the problem and in attempting to restore the corrupted data." (Plaintiffs' Second Amended Complaint, ¶ 15).  According to plaintiffs, "as a direct result of the error made by Rao," Convergys was required to pay Sprint PCS for the losses it sustained as a result of the corrupted data, a portion of which Convergys was reimbursed by Chubb, its insurance carrier.  Plaintiffs insist that defendants are responsible for the full amount paid by Convergys to Sprint PCS and are liable to plaintiffs for breach of contract, indemnification, and fraud based upon the principles of *respondeat superior*.  (Plaintiffs' Second Amended Complaint, ¶¶ 16, 18, 24, 27-29, 36).

    C.  <u>Relevant Procedural History</u>.

Plaintiffs filed their original Complaint in this matter on September 14, 2001.  (*See* Docket, Doc. #1).  On March 28, 2002, Magistrate Sherman entered a Calendar Order setting various pretrial deadlines and a trial-ready date.  (*See* Docket, Doc. #11).  That Calendar Order required plaintiffs to identify their primary expert witnesses and provide primary expert

witness reports by September 2, 2002. Plaintiffs were given until November 1, 2002, to identify their rebuttal experts and provide the reports of those experts. (*Id*.)

On August 5, 2002, Convergys moved this Court for an Amended Calendar Order in support of which it argued that the trial schedules of its counsel made it "difficult for Convergys to produce its primary expert reports by the original deadline of September 2, 2002." (*See* Docket, Doc. # 19). Judge Beckwith entered an Order granting Convergys' request and amended the original Calendar Order. (*See* Docket, Doc. #22). Although the deadline for the written reports of plaintiffs' primary expert witnesses was extended to October 15, 2002, the September 2, 2002 deadline by which plaintiffs were to disclose the identity of those witnesses was left undisturbed. The deadline for plaintiffs to identify their rebuttal expert witnesses was extended until December 1, 2002. Plaintiffs were required to provide the written reports of those experts by that same date. (*Id*.)

On December 3, 2002, plaintiffs filed a Notice of Compliance in which they informed the Court they did not designate any primary expert witnesses and therefore, did not produce any primary expert reports. (*See* Docket, Doc. # 27). On January 9, 2003, defendants filed their Notice of Compliance in which they informed the Court that they had disclosed the identity of their expert witness and provided the then report of that expert to plaintiffs. Defendants also indicated in that Notice that they did not identify rebuttal experts since plaintiffs did not identify any primary experts or produce primary expert reports. (*See* Docket, Doc. #29).

On January 14, 2003, plaintiffs filed their Witness List/Testimony Summary with the Court. (*See* Docket, Doc. #30). In that document, plaintiffs listed approximately 130 current and former employees of Convergys as potential witnesses. Nowhere in their Witness List/Testimony Summary did plaintiffs indicate that any of the numerous individuals identified therein would be offering expert testimony, let alone the substance and basis of their expert

opinions.    Plaintiffs merely noted that all of the numerous current and former Convergys employees identified by them may offer testimony concerning, *inter alia*, issues that necessarily go to causation, including "the cause of the database corruption" and "Plaintiffs' damages." (*Id*).

  D. Convergys Failed to Preserve Evidence of Actions Taken and Work Performed by Other Database Administrators on September 17, 1999.

  In the ordinary course of its business, Convergys generates an electronic record of the work performed by each database administrator ("DBA"), including by what is commonly referred to in the industry as a "keystroke log" or "shell history." That keystroke log represents a record of each and every keystroke entered by a DBA during the course of performing programming work in Convergys' computer system.  A separate keystroke log exists for each DBA doing work in the system.  Other electronic logs (e.g., alert logs), likewise electronically record and track on a contemporaneous basis various DBA or related activity and/or the results thereof.

  In addition to Rao, various other DBA's employed or retained by Convergys also were working in its computer system on September 17, 1999, the date it is alleged that Rao corrupted the database files containing Sprint PCS information.   Moreover, Convergys has admitted that several of its other DBA's and supervisors had access to Rao's keystroke log of September 17, 1999, and actually did access over a period of days that log during the course of their investigation into the cause the database corruption.  Nonetheless, Convergys also has admitted that with the exception of Rao's keystroke log, it failed to preserve the keystroke logs of its other DBA's or supervisor representatives that would show what work they performed and what actions they took shortly prior to the September 17, 1999 data corruption, which may have been a cause or contributing cause of the database corruption itself, and also what actions those DBA's took after the discovery of the data corruption, including the actions taken by them while accessing Rao's keystroke log and while taking the recovery and restoration actions for which

Convergys seeks recovery in this action.  (*See e.g.*, excerpts from the Rule 30(b)(6) designee depositions of William Koopmans and Darin Brown, copies of which are hereto as Exhibit 1).

## II.  LAW AND ARGUMENT

Plaintiffs' claims in this litigation are essentially two-fold.[2]   First, they assert that defendants breached the contract that plaintiffs contend govern the services that were provided to Convergys when Rao allegedly corrupted the database files containing the Sprint PCS information on September 17, 1999.  Secondly, plaintiffs contend that defendants are liable for fraud because Rao allegedly "repeatedly represented to Convergys" that he had not worked on or with the corrupted database files and tried to "purposefully hide his mistake from Convergys [  ], by manipulating and changing project logs and other records to conceal his error."

To prevail on their breach of contract claim, plaintiffs must prove (1) the existence of a contract; (2) performance of that contract by them; (3) breach of that contract by defendants; and (4) that the breach of that contract caused the damages they seek to recover. *Doner v. Snapp* (1994), 98 Ohio App.3d 597, 600, 649 N.E.2d 42, 44; *Metropolitan Life Ins. Co. v. Triskett Illinois* (1994), 97 Ohio App.3d 228, 235, 646 N.E.2d 528, 532.   To establish a breach by defendants, plaintiffs must necessarily demonstrate that Rao was negligent in performing the services he rendered on September 17, 1999.  In other words, they must show that he failed to perform those services in a workmanlike manner using the requisite skill, care, and diligence.[3]   They must also establish that Rao's alleged failure to perform those services in a workmanlike manner caused the data corruption and also the alleged money damages they seek

---

[2]    Although Convergys has also asserted a claim against defendants for indemnification, that claim arises out of and is derivative of its claim that defendants breached the contract that it contends governs the services that Mastech provided to Convergys.  (*See* Docket, Doc. #1).

[3]    The contract that plaintiffs contend govern this dispute actually states that the services to be rendered were to be performed with the highest degree of care and skill that is customary in the industry.  A copy of that contract is attached to plaintiffs' original and subsequent Amended Complaints.   (*See* Docket, Doc. #1).

to recover in this litigation.  *Hunsicker v. Buckeye Union Cas. Co.* (1953), 95 Ohio App. 241, 244, 118 N.E.2d 922, 924.

As to plaintiffs' fraud claim, they must that show that (1) Rao made a representation or concealed a fact that he had a duty to disclose; (2) the representation or concealment was material to the matter at hand; (3) Rao made the representation knowing it was false or made it with such utter and reckless disregard for whether it was true or false that knowledge is inferred; (4) Rao intended to mislead Convergys into relying upon his representation or concealment; (5) Convergys justifiably relied upon Rao's representation or concealment; and (6) Convergys sustained damages that were proximately caused by its reliance. *See Brewer v. Brothers* (1992), 82 Ohio App.3d 148, 153, 611 N.E.2d 294, 495.

This entire litigation essentially revolves around issues of causation.  For example, in addition to whether Rao's alleged actions actually caused the database corruption in question is the issue of whether those actions caused the extensive monetary damages that plaintiffs are seeking to recover.  Similarly, there are issues of whether the purported "cover up" by Rao of his mistake and his supposed denials of having worked on or with the database files at issue somehow caused a delay in Convergys' ability to determine the cause of the corruption, its efforts to restore the data or its alleged inability to ultimately do so, and the resulting monetary losses that Convergys claims it incurred as a consequence thereof.

Making these issues of causation even more complex is the subject matter involved — computer programming.  Whether expert testimony is necessary in a particular case depends upon whether the issues are within the comprehension of the average trier of fact. *Ramage v. Central Ohio Emergency Serv., Inc.* (1992), 64 Ohio St.3d 97, 102, 592 N.E.2d 828, 833.  "Generally, expert opinion evidence is required when the inquiry pertains to a highly technical question of science or skill."  *See State v. Bower*, 1996 WL 130979 at *6 (Ohio App. 4

Dist. March 1996).[4]   "The issue of whether a matter is so highly technical or scientific in nature, or beyond the experience or knowledge of the average trier of fact that it requires expert testimony, is fact-sensitive."   *Earl v. Leiffer Constr., Inc*., 2001 WL 991530 at \*2 (Ohio App. 2 Dist. Aug. 31, 2001).[5]   It is difficult to image a more highly technical subject matter than the field of "high technology" itself.   In fact, one court faced with merely interpreting the terms of a contract dealing with computer and software services concluded that expert testimony was required in order to do so.   In its words,

> In the case sub judice we are involved in the area of computer and software contracts, a high technology and specialized field with a language all of its own. Therefore, in order to intelligently interpret the words 'derivative works' in conjunction with the specialized field from which it is derived, the trier of fact must resort to expert testimony inasmuch as they must be considered as words of art and be given their technical meaning.

*Manufacturing Mgmt. Systems, Inc. v. Data Solutions, Inc*., 1987 WL 8229 at \*2 (Ohio App. 11 Dist. March 20, 1987).[6]

For these reasons, expert testimony is clearly required to prove the claims presented by plaintiffs in this litigation, and in particular, the elements of causation associated with those claims.  Yet, as demonstrated below, plaintiffs cannot and should not be permitted to offer such testimony.

A. Plaintiffs Failed to Comply with Rule 26 of the Federal Rules of Civil Procedure and the Order of this Court Pertaining to the Disclosure of Expert Witnesses.

Rule 26(a)(2) of the Federal Rules of Civil Procedure, which governs the disclosure of expert testimony, provides in pertinent part that "[i]n addition to the disclosures required by paragraph (1), a party shall disclose to other parties the identity of any person who

---

[4]      A copy of the *Bower* opinion is attached hereto as Exhibit 2.

[5]      A copy of the *Earl* opinion is attached hereto as Exhibit 3.

[6]      A copy of the *Data Solutions* opinion is attached hereto as Exhibit 4.

may be used at trial to present evidence under Rules 702, 703 or 705 of the Federal Rules of

Evidence." Fed. R. Civ. P. 26(a)(2)(A).   That Rule further provides that

> Except as otherwise stipulated or directed by the court, this disclosure shall, with respect to a witness who is retained or specially employed to provide expert testimony in the case or whose duties as an employee of the party regularly involve giving expert testimony, be accompanied by a written report prepared and signed by the witness.   The report shall contain a complete statement of all opinions to be expressed and the basis and reasons therefore; the data or other information considered by the witness in forming the opinions; any exhibits to be used as a summary of or support for the opinions; the qualifications of the witness, including a list of all publications authored by the witness within the preceding ten years; the compensation to be paid for the study and testimony; and a listing of any other cases in which the witness has testified as an expert at trial or by deposition within the preceding four years.

Fed. R. Civ. P. 26(a)(2)(B).

Moreover, the expert witness disclosures provided for by Rule 26 "shall be made

at the times and in the sequence directed by the court." Fed. R. Civ. P. 26(a)(2)(C).   Pursuant to

the Amended Calendar Order entered by Judge Beckwith, plaintiffs were required to disclose the

identities of their primary expert witnesses by September 2, 2002.   At Convergys' request, the

deadline for plaintiffs to provide the written reports of their primary expert witnesses was

extended to October 15, 2002.   Plaintiffs were given until December 1, 2002, to identify any

rebuttal expert witnesses they intended to call at the trial in this matter.   The written reports of

those rebuttal expert witnesses were to be provided on the same date. (*See* Docket, Doc. # 19 and

Doc. # 22).

Despite bearing the ultimate burden of proof on the claims asserted by them,

plaintiffs chose not to identify any primary or rebuttal expert witnesses in this litigation. (*See*

Docket, Doc. # 29).   Pursuant to Rule 37 of the Federal Rules of Civil Procedure, "[a] party that

without substantial justification fails to disclose information required by Rule 26(a) . . . ., is not,

unless such failure is harmless, permitted to use as evidence at a trial, at a hearing, or on a

motion any witness or information not so disclosed."   Fed. R. Civ. P. 37(c).   Plaintiffs did not

10

merely fail for excusable reasons to comply with Rule 26 and the Order of this Court to identify expert witnesses in this litigation. To the contrary, they elected not to identify any such witnesses. Rule 37 plainly requires the Court to preclude plaintiffs from offering any expert testimony at the trial in this matter and to grant defendants' Motion *in Limine* requesting that preclusion.

> B. Plaintiffs Cannot be Permitted to use Convergys Employees to Offer the Requisite <u>Expert Testimony at Trial</u>.

Having chosen not to designate any expert witnesses in this litigation, plaintiffs cannot circumvent Rule 26 or the Order of this Court simply by having Convergys employees offer testimony generally offered by outside expert witnesses. Although Rule 26 specifically contemplates that parties may use their own employees as experts,[7] there is nothing in Rule 26 or in the Order of the Court that excused plaintiffs from complying with their obligation to formally and timely disclose the identities of the individuals they wished to utilize as expert witnesses at trial and to timely provide the specifics of the expert opinions and grounds for those opinions in accordance with the standards of Rule 26. Merely identifying present or former employees in their Witness List/Testimony Summary who may offer testimony on a variety of issues, including causation, and then producing for fact witness depositions those witnesses noticed by defendants based upon defendants' review of the document production record can hardly be said to have satisfied plaintiffs' disclosure obligations. This is particularly true in light of the fact that nowhere in any of their pretrial filings have plaintiffs designated which employees, if any, would be acting as their experts in this litigation. (*See* Docket, Doc. #30). If plaintiffs wished to use Convergys employees to offer expert testimony in this litigation, they had ample opportunity to disclose their identities and to comply with Rule 26 and the Order of this Court. They opted not

---

[7]    *See e.g.*, Fed. R. Civ. P. 26(a)(2)(B).

to do so and Rule 37 of the Federal Rules of Civil Procedure compels the exclusion of any expert testimony by those employees.[8]

        C.   Apart from their Failure to Comply with Rule 26 and the Order of this Court, Convergys' Failure to Preserve Critical Evidence Warrants the Exclusion of Any Expert Testimony by Plaintiffs.

Even if plaintiffs had timely and properly identified certain Convergys DBA's or other employees or representatives as expert witnesses in this litigation, or if the Court was inclined for some reason to allow them to belatedly do so, Convergys' failure to preserve the keystroke logs or other electronic records of the contemporaneous conduct of those DBA's and computer professionals cannot be ignored. Both intentional and negligent spoliation of evidence are "sufficient to trigger sanctions where the opposing party is disadvantaged by the loss." *Travelers Ins. Co. v. Dayton Power and Light Co*. (1996), 76 Ohio Misc.2d 17, 20, 663 N.E.2d 1383, 1385. A defendant enjoys a rebuttable presumption it was prejudiced by the spoliation of evidence where it demonstrates "(1) that the evidence is relevant, (2) that the plaintiff's expert had an opportunity to examine the unaltered evidence, and (3) even though the plaintiff was contemplating litigation against the defendant, this evidence was intentionally or negligently destroyed without providing an opportunity for inspection by the defense." *Hess v. Norfolk Southern Railway Co*. (2003), 153 Ohio App.3d 565, 575-76, 795 N.E.2d 91, 99.

       Once that showing has been made, "the burden shifts to the plaintiff to show that there is no reasonable possibility that the lack of access to the [evidence] deprived the defendant of favorable evidence otherwise unobtainable; that is, the defendant was not prejudiced." *Id*. "The relative importance of the information denied the opposing party bears directly on the

---

[8]     Aside from plaintiffs' failure to comply with Rule 26 and the Order of this Court, Convergys' corporate designees for purposes of Rule 30(b)(6) of the Federal Rules of Civil Procedure essentially admitted they did not know for sure why or how the database containing the Sprint PCS information became corrupted. This alone presents a separate issue of whether that testimony even qualifies for admission under Rule 702 of the Federal Rules of Evidence, but one the Court need not reach due to the mandatory exclusion of any expert testimony by plaintiffs called for by Rule 37 of the Federal Rules of Civil Procedure. Fed. R. Evid. 702; Fed. R. Civ. P. 37(c).

reasonableness of such party's action and the resulting prejudice." *Travelers Ins. Co.*, 76 Ohio Misc.2d at 20, 663 N.E.2d at 1385.

It is beyond dispute that the keystroke logs and other electronic records of the Convergys DBA's and other computer professionals who were working on Convergys' computer system on and after the September 17, 1999 data corruption incident, are relevant evidence. Convergys obviously has had the opportunity to examine all the available keystroke logs and other electronic records of all activity related to the affected computer operations and access to the electronic records of Rao's activities and the activities of those Convergys representatives who investigated that activity and were involved in the restoration and recovery events in question. Since Convergys had the forethought to preserve Rao's keystroke log from September 17, 1999, and certain other electronic records relating to Rao, it is only logical that Convergys knew at the time it permitted the destruction of the contemporaneous keystroke logs and other electronic records of its other DBA's and computer professionals from that day that it was contemplating litigation against defendants.

Plaintiffs simply cannot overcome on the present record the rebuttable presumption of prejudice to defendants caused by Convergys' destruction of the keystroke logs of its DBA's.   To be sure, there is more than a reasonable possibility that defendants' lack of access to the variety of contemporaneous electronic records in question deprived them of favorable evidence they have no other way of obtaining.   Those logs and related electronic records could have assisted defendants in further establishing that there were other causes or contributing causes for the database corruption in question (i.e., work performed and actions taken by Convergys' DBA's) and that the remedial and restoration activities undertaken by Convergys were deficient or otherwise added to the delay and expense for which Convergys seeks recovery in this action.   They also could have helped defendants establish that Rao did not,

as plaintiffs contend, try to hide his alleged mistake by "manipulating and changing project logs and other records." Without the keystroke logs and other electronic records of Convergys' personnel who were accessing Rao's log, Convergys has significantly impacted defendants' ability to show that Convergys' own employees could have altered (deliberately or inadvertently) Rao's keystroke log or other electronic records making it appear as though Rao himself had done so.

When Convergys destroyed or failed to preserve all relevant electronic records of its activities, it knew or should have known that the logs would be material in a future lawsuit. Despite their obvious importance, Convergys chose to destroy (or at least not preserve) them anyway and kept only certain limited electronic records relating to Rao. The Court has a wide range of sanctions available to it when faced with spoliation.[9] Under the circumstances, exclusion of any expert testimony by Convergys' DBA's or any of its other employees is the only appropriate one.

III. CONCLUSION

For the foregoing reasons, defendants' Motion *in Limine* should be granted and an Order entered by this Court precluding plaintiffs from offering any expert opinion testimony in this litigation, including as related to causation, either as to the cause of the data base corruption incidents itself or the cause of the damages allegedly suffered as a result of such database corruption.

---

[9] *See Travelers Ins. Co.*, 76 Ohio Misc.2d at 20, 663 N.E.2d at 1385.

Respectfully submitted,


__/s/ Jacqueline Schuster Hobbs_____
Donald J. Mooney, Jr. (0014202)
Jacqueline Schuster Hobbs (0068236)
ULMER & BERNE LLP
600 Vine Street, Suite 2800
Cincinnati, Ohio 45202
(513) 698-5000
(513) 698-5001 (Fax)
dmooney@ulmer.com
jhobbs@ulmer.com


OF COUNSEL:

Kevin P. Lucas, Esq.
Pa. I.D. No. 25596
Robert J. Williams, Esq.
Pa. I.D. No. 76139
MANION McDONOUGH & LUCAS, P.C.
Firm I.D. No. 786
600 Grant Street, Suite 1414
Pittsburgh, Pennsylvania  15219
(412) 232-0200

Attorneys for Defendants


CERTIFICATE OF SERVICE

       The undersigned certifies that a copy of the foregoing was filed electronically with the Court and served electronically upon Grant S. Cowan, Esq., and Robert Shank, Esq., Frost Brown Todd LLC, Attorneys for Plaintiffs, 2200 PNC Center, 201 East Fifth Street, Cincinnati, Ohio  45202, this 23rd day of March, 2004.


__/s/ Jacqueline Schuster Hobbs_____