# EXHIBITS 2, 3, & 4 TO DEFENDANTS' MOTION *IN LIMINE* TO PROHIBIT PLAINTIFFS FROM OFFERING EXPERT TESTIMONY

Not Reported in N.E.2d
(Cite as: 1996 WL 130979 (Ohio App. 4 Dist.))

Page 1

C
Only the Westlaw citation is currently available.

CHECK OHIO SUPREME COURT RULES FOR REPORTING OF OPINIONS AND WEIGHT OF LEGAL AUTHORITY.

Court of Appeals of Ohio, Fourth District, Ross County.

STATE of Ohio, Plaintiff-Appellee,
v.
Kenneth E. BOWER, Jr., Defendant-Appellant.

No. 94 CA 2053.

March 15, 1996.

COUNSEL FOR APPELLANT:James T. Boulger, 14 South Paint Street, Suites 10- 14, Chillicothe, Ohio 45601,

COUNSEL FOR APPELLEE:Judith A. Heimerl, Asst. Law Director, 32 South Paint Street, Chillicothe, Ohio 45601.

DECISION AND JUDGMENT ENTRY

ABELE, P.J.

*1 This is an appeal from a judgment of conviction and sentence entered by the Chillicothe Municipal Court. The jury found Kenneth E. Bower, Jr., defendant below and appellant herein, guilty of driving with a breath alcohol concentration above the statutory limit in violation of R.C. 4511.19(A)(3).

Appellant assigns the following errors:
FIRST ASSIGNMENT OF ERROR:
"THE TRIAL COURT ERRED TO THE PREJUDICE OF THE DEFENDANT BY DENYING THE DEFENDANT'S MOTION TO SUPPRESS, WHICH MOTION ASSERTED THE ARRESTING OFFICER LACKED REASONABLE SUSPICION TO STOP AND DETAIN THE DEFENDANT ON THE DATE OF HIS ARREST, SAID DETENTION BEING IN VIOLATION IN RIGHTS SECURED TO THE DEFENDANT UNDER THE FOURTH AND FOURTEENTH AMENDMENT OF THE UNITED STATES CONSTITUTION AND ARTICLE ONE, SECTION FOURTEEN OF THE CONSTITUTION OF THE STATE OF OHIO. "[sic ]
SECOND ASSIGNMENT OF ERROR:
"THE TRIAL COURT ERRED TO THE PREJUDICE OF THE DEFENDANT AND DENIED TO THE DEFENDANT THE RIGHT OF DUE PROCESS OF LAW SECURED TO THE DEFENDANT UNDER THE FIFTH AND FOURTEENTH AMENDMENTS OF THE UNITED STATES CONSTITUTION, BY REFUSING TO PERMIT THE DEFENDANT TO PLACE IN EVIDENCE AT TRIAL THOSE MATTERS WHICH WERE THE SUBJECT OF THE STATE'S MOTION IN LIMINE OF AUGUST 17, 1994, AND WHICH WERE PRESENTED TO THE COURT BY PROFFER DURING THE COURSE OF THE TRIAL ON AUGUST 18, 1994, AS FOLLOWS. "[sic ]
THIRD ASSIGNMENT OF ERROR:
"THE TRIAL COURT ERRED TO THE PREJUDICE OF THE DEFENDANT IN FAILING TO EXCLUDE FROM EVIDENCE AT TRIAL IN THIS MATTER ALL ITEMS OF EVIDENCE OBTAINED AS A RESULT OF THE ARREST OF THE DEFENDANT, THE COURT HAVING PREVIOUSLY DETERMINED THAT THE ARRESTING OFFICER DID NOT HAVE REASONABLE CAUSE FOR SAID ARREST. THE FRUITS OF ARREST WERE OBTAINED IN VIOLATION OF RIGHTS SECURED TO THE DEFENDANT UNDER THE FOURTH AND FOURTEENTH AMENDMENTS OF THE UNITED STATES CONSTITUTION AND ARTICLE ONE SECTION FOURTEEN OF THE CONSTITUTION OF THE STATE OF OHIO. "

On February 2, 1994, at approximately 3:51 a.m., Ohio State Patrol Trooper Terrell Barnes observed appellant's vehicle turn from State Route 159 into the Medical Center Hospital parking lot and drive to the rear of the premises. Several minutes later, appellant's vehicle re-entered State Route 159. The officer followed the vehicle and observed appellant stop in a residence driveway and park for several minutes. Appellant then backed out of the driveway and drove toward Sulphur Springs Road. Several minutes later, Trooper Barnes observed appellant turn left onto Sulphur Springs Road. Appellant drove for approximately one and one-half miles before turning into another residential driveway. The officer testified that he drove past appellant's last stop and pulled into the Zane Trace High School parking lot. When appellant drove past him, the officer followed appellant for approximately two- tenths of a mile before activating his pursuit lights and stopping appellant's vehicle.

The officer approached appellant's vehicle and detected a strong odor of alcoholic beverage. After appellant failed to satisfactorily complete several physical coordination tests, Trooper Barnes arrested appellant. Appellant's breath-alcohol test revealed a concentration of .133 hundredths of one gram by weight of alcohol per 210 liters of breath. Trooper Barnes issued uniform traffic citations to appellant charging him with: (1) operating a vehicle while under the influence of alcohol in violation of R.C. 4511.19(A)(1); (2) operating a vehicle with a breath-alcohol concentration above the statutory limit in violation of R.C.

Not Reported in N.E.2d
(Cite as: 1996 WL 130979 (Ohio App. 4 Dist.))

Page 2

4511.19(A)(3); and (3) driving left of center, in violation of R.C. 4511.25. Appellant's driver's license was also seized and placed under suspension pursuant to R.C. 4511.191(H)(1), the administrative license suspension statute.

*2 At his arraignment, appellant entered not guilty pleas and appealed his administrative license suspension (ALS). On February 18, 1994, a referee conducted a hearing to consider the ALS appeal. The referee recommended that appellant's administrative license suspension be terminated. The referee's report provides in pertinent part as follows:
"The officer did not have reasonable grounds to believe Defendant was operating a vehicle while under the influence, or with alcohol above the specified limits."
By judgment entry filed the same day, the court adopted the findings and recommendations in the referee's report and terminated appellant's administrative license suspension.

On April 19, 1994, appellant filed a motion to suppress evidence asserting that the arresting officer did not possess a reasonable and articulable suspicion to stop appellant. On April 22, 1994, the court held a hearing on the matter. After considering the testimony and evidence presented by the parties, the court overruled appellant's motion. The court found that appellant's driving in the center of the road provided the officer with a valid basis for the investigative stop.

On August 17, 1994, one day before trial, the trial court held a hearing to consider several unresolved motions. At the hearing, the state dismissed the R.C. 4511.19(A)(1) charge of operating a motor vehicle while under the influence of alcohol and the R.C. 4511.25 violation for travelling left of center.

Appellant also sought to exclude the results of his breath-alcohol test. Appellant argued that because the court, during the ALS proceeding, had previously found a lack of reasonable and articulable suspicion for the stop, the doctrines of *res judicata* and collateral estoppel precluded the introduction of that evidence during the criminal proceedings. The trial court overruled appellant's motion.

Additionally, at the August 17, 1994, hearing, the state filed a motion *in limine* regarding appellant's prospective testimony concerning his use of an oral denture product ("Anbesol") at or near the time of his arrest. The state contended that without expert testimony, the court and the jury could not know with certainty the amount of alcohol contained in appellant's dentures at the time of his arrest and the effect the Anbesol had on appellant's breath-alcohol test results. On August 18, 1994, prior to the commencement of the jury trial, the trial court granted the state's motion *in limine*. [FN1] At trial, appellant proffered the evidence which formed the basis of the prosecution's motion *in limine*. [FN2]

FN1. In pertinent part, the court stated:
"The Court then, in consideration of that testimony, has and does hereby on the record rule that the Motion will be granted that until or unless testimony can be specifically adduced that would allow a trier of fact to conclude how, if at all, and what manner, the alcohol in the Anbesol would effect the test result, that such is not relevant as it cannot be used by the trier of fact as the trier of fact must guess as to whether or not it's even adverse or positive on the test result, and further, even if it were, even if the inference could have been drawn that it adversely effected it, that without precision as to or in what manner and what degree that such limited probative value is far outweighed by any effort ... so the Motion for Limine is granted and counsel are instructed to abide by the Court's ruling."

FN2. The trial court judge stated as follows:
"The Court will abide by its prior ruling. The Court finding that in the absence of any testimony to relate what effect, if any, this would have on the test sample and/or result over this period of time is so highly speculative that: (1) it is not probative and therefore not relevant, and even if the Court could stretch the point that it were, it has such limited ... it relies so on conjection, therefore, it is prejudiced and substantially (inaudible), and it will not be permitted."

At the conclusion of the trial, the jury found appellant guilty of violating R.C. 4511.19(A)(3). Appellant filed a timely notice of appeal.

I

In his first assignment of error, appellant asserts that the trial court erred by overruling his motion to suppress evidence. Appellant contends that the arresting officer did not have a proper constitutional basis for the initial stop of appellant's vehicle.

*3 In particular, appellant argues that straddling the center of an unmarked roadway is not sufficient to establish a reasonable suspicion to support a traffic stop. Appellant asserts that because the roadway was unlined, he was only required to yield one-half of the roadway to on-coming traffic. Appellant reasons that because he did not encounter any on-coming traffic while traveling on Sulphur Springs Road, he did not violate R.C. 4511.25 [FN3] and, therefore, Trooper Barnes had no basis to stop him.

FN3. R.C. 4511.25(A) provides:

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

Not Reported in N.E.2d
(Cite as: 1996 WL 130979 (Ohio App. 4 Dist.))

Page 3

Upon all roadways of sufficient width, a vehicle or trackless trolley shall be driven upon the right half of the roadway, except as follows:
(1) When overtaking and passing another vehicle proceeding in the same direction, or when making a left turn under the rules governing such movements;
(2) When an obstruction exists making it necessary to drive to the left of the center of the highway; provided, any person so doing shall yield the right of way to all vehicles traveling in the proper direction upon the unobstructed portion of the highway within such distance as to constitute an immediate hazard;
(3) When driving upon a roadway divided into three or more marked lanes for traffic under the rules applicable thereon;
(4) When driving upon a roadway designated and posted with signs for one- way traffic; (5) When otherwise directed by a police officer or traffic control device.

Initially, we point out that in a hearing on a motion to suppress evidence, the trial court assumes the role of trier of fact and is in the best position to resolve questions of fact and evaluate the credibility of the witnesses. *State v. Venham* (1994), 96 Ohio App.3d 649, 645 N.E.2d 831; *State v. Lewis* (1992), 78 Ohio App.3d 518, 605 N.E.2d 451; *State v. Clay* (1973), 34 Ohio St.2d 250, 298 N.E.2d 137; *State v. Warren* (Aug. 12, 1991), Hocking App. No. 90CA7, unreported. Thus, it is the trial court's function to determine the credibility of witnesses giving testimony at a suppression hearing. A reviewing court should not disturb the trial court's findings on the issue of credibility. *State v. Fanning* (1982), 1 Ohio St.3d 19, 437 N.E.2d 583; *State v. Tutt* (Apr. 14, 1986), Warren App. No. CA85-09-056, unreported. Accordingly, in our review, we are bound to accept the trial court's findings of fact if they are supported by competent, credible evidence. Accepting these facts as true, we must independently determine as a matter of law, without deference to the trial court's conclusions, whether they met the appropriate legal standards. See *Venham, supra; State v. Shelpman* (May 23, 1991), Ross App. No. 1632, unreported; *State v. Simmons* (Aug. 3, 1990), Washington App. No. 89CA18, unreported.

The Fourth and Fourteenth Amendments to the United States Constitution as well as Section 14, Article I of the Ohio Constitution, prohibit any governmental search or seizure, including a brief investigative stop, unless supported by an objective justification. *Terry v. Ohio* (1968), 392 U.S. 1; *State v. Andrews* (1991), 57 Ohio St.3d 86, 565 N.E.2d 1271; *Venham, supra.* The investigative stop exception to the Fourth Amendment warrant requirement allows a police officer to stop any individual if the officer has a reasonable suspicion, based upon specific and articulable facts, that criminal behavior has occurred or is imminent. *Terry, supra; State v. Andrews* (1991), 57 Ohio St.3d 86, 565 N.E.2d 1271. To justify an investigative stop, a police officer must be able to articulate specific facts which, taken together with rational inferences from those facts, would warrant a person of reasonable caution in the belief that the person stopped has committed or is committing a crime. *Terry, supra* at 19-21.

In *State v. Simmons* (Aug. 30, 1990), Washington App. No. 89 CA 18, unreported, we wrote:
*4 "Law enforcement encounters with suspected drunk drivers involve two stages: (1) a stop and (2) a subsequent arrest. *State v. Finch* (1985), 24 Ohio App.3d 38, 492 N.E.2d 1254. Pursuant to *Terry, supra,* an officer may briefly detain an individual awhile he investigates the suspicious behavior which gave rise to the stop. A detention conducted pursuant to *Terry* must be based upon a reasonable and articulable suspicion of criminal activity. *United States v. Sharpe* (1985), 470 U.S. 675, 105 S.Ct. 1568, 84 L.Ed.2d 605. The articulable and reasonable suspicion must exist in the officer's mind at the time of the stop and cannot be based on facts obtained after the initial stop. *State v. Freeman* (1980), 84 Ohio St.2d 291, 294, 414 N.E.2d 1044. See, also, *Delaware v. Prouse* (1979), 440 U.S. 648, 59 L.Ed.2d 660, 99 S.Ct. 1391. *State v. Brandenburg* (1987), 41 Ohio App.3d 109, 534 N.E.2d 906; *State v. Heinrichs* (1988), 46 Ohio App.3d 63, 545 N.E.2d 1304."

Thus, if specific and articulable facts exist that indicate that a criminal violation has occurred, or is occurring, a vehicle may be stopped and the driver detained for further investigation. The propriety of an investigative stop must be determined in light of the totality of the circumstances. *State v. Freeman* (1980), 64 Ohio St.2d 291, 414 N.E.2d 1044; *State v. Chatton, supra; State v. Meadows* (Dec. 31, 1991), Hocking App. No. 91 CA 6, unreported.

R.C. 4511.25(A) imposes a mandatory duty to drive solely upon the right half of the roadway unless, *inter alia,* an obstruction exists preventing a driver from obeying the statute's requirement. See *Oechsle v. Hart* (1967), 12 Ohio St.2d 29, N.E.2d; *State v. Ingram* (Nov. 27, 1991), Wayne App. No. 2649, unreported. Additionally, lines or markings on the roadway are not required to establish a violation of R.C. 4511.25(A). [FN4] In *State v. Arredondo* (May 6, 1994), Wood App. No. 93WD107, unreported, the court wrote:

FN4. We note that R.C. 4511.33 speaks to the rules for driving in marked lanes.

"A brief investigative detention is authorized where the detaining officer has a reasonable suspicion, based upon

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

Not Reported in N.E.2d
(Cite as: 1996 WL 130979 (Ohio App. 4 Dist.))

Page 4

articulable facts, that the suspect has committed, is committing, or is about to commit a criminal offense. *Terry v. Ohio* (1968), 392 U.S. 1, 20 L.Ed.2d 889, 88 S.Ct. 1868. In this case, the detaining officer testified, and the trial court found, that appellant was observed violating R.C. 4511.25 by failing to drive on the right side of the road. Appellant, nevertheless, argues that the court's finding is not dispositive because the center line of the road is unmarked. However, R.C. 4511.25(A) requires a motorist to drive on the right side of a roadway except under some limited circumstances; those circumstances are not applicable to this case. Therefore, the trial court was justified in finding that the officer had sufficient cause for the initial detention of appellant based upon the fact that the officer observed appellant driving left of center."

*5 See, also, *State v. Stamper* (Apr. 7, 1995), Ashtabula App. No. 94-A-0013, 94-A-0044, unreported; *State v. Grotz* (Oct. 7, 1994), Wood App. No. 94WD029, unreported; *State v. Beaver* (Sept. 8, 1994), Washington App. No. 93CA27, unreported; *State v. Bryant* (May 21, 1990), Clermont App. No. CA89-10-085, unreported.

In the case *sub judice,* we agree with the trial court's conclusion that Trooper Barnes articulated sufficient facts to constitute a reasonable suspicion to justify an investigative stop of appellant's vehicle. At the suppression hearing, appellant testified that he did not "feel" that he drove his vehicle in the center of the road. The officer's testimony, however, provided sufficient facts warranting a person of reasonable caution to believe that appellant was committing or about to commit a crime. The officer observed appellant straddle the center of the roadway. Trooper Barnes testified that appellant "was driving down the center of the road so I stopped him." We note that the testimony revealed that this particular portion of the road is straight and that no obstructions existed to prevent appellant from traveling on the right side of the road. We further note that appellant's failure to drive on the right side of the road cannot be characterized as a momentary or minimal failure to comply with the statute's requirements.

We recognize that the officer's testimony and the appellant's testimony conflicted. The trial court, however, chose to believe the version of the facts as stated by Trooper Barnes. In *State v. Awan* (1986), 22 Ohio St.3d 120, 123, 489 N.E.2d 277, 280, the court emphasized that appellate courts must defer conflicts in the evidence to the trier of fact who had the opportunity to hear the witnesses and observe their demeanor:
"The choice between credible witnesses and their conflicting testimony rests solely with the finder of fact and an appellate court may not substitute its own judgment for that of the trier of fact."
Therefore, we must defer to the trial court's choice to believe the arresting officer's testimony concerning appellant's failure to drive on the right side of the roadway.

In the instant case we conclude that under the totality of the circumstances the officer possessed the requisite reasonable and articulable suspicion of criminal activity to justify the investigative stop. Accordingly, based upon the foregoing reasons we overrule appellant's first assignment of error.

II

In his second assignment of error, appellant asserts that the trial court erred when it refused to allow appellant to introduce evidence concerning his use of Anbesol, an oral pain product which contains ethyl alcohol, shortly before his arrest. Appellant argues that his use of Anbesol, in conjunction with the fact that he has two partial dental plates, could have trapped residual alcohol and affected the accuracy of his breath-alcohol test. We note that the trial court determined that appellant could not introduce evidence of this nature unless it is supported by expert testimony. The trial court granted the motion "until testimony can be adduced that would allow the trier of fact to conclude that alcohol in Anbesol would affect the test results."

*6 We begin our discussion by noting that the decision to admit or to exclude evidence rests within the sound discretion of the trial court. *State v. Combs* (1991), 62 Ohio St.3d 278, 581 N.E.2d 1071; *State v. Sage* (1987), 31 Ohio St.3d 173, 510 N.E.2d 343; *State v. Hymore* (1967), 9 Ohio St.2d 122, 224 N.E.2d 126. An abuse of discretion connotes more than an error of law or of judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable. *State v. Xie* (1991), 62 Ohio St.3d 521, 584 N.E.2d 715; *State v. Montgomery* (1991), 61 Ohio St.3d 410, 575 N.E.2d 167. When applying the abuse of discretion standard, a reviewing court is not free to merely substitute its judgment for that of the trial court. See *In re Jane Doe 1* (1991), 57 Ohio St.3d 135, 566 N.E.2d 1181, citing *Berk v. Matthews* (1990), 53 Ohio St.3d 161, 559 N.E.2d 1301. In *City of Columbus v. Taylor* (1988), 39 Ohio St.3d 162, 164, 529 N.E.2d 1382, 1385, the court wrote:
"It is axiomatic that a determination as to the admissibility of evidence is a matter within the sound discretion of the trial court. See *Calderon v. Sharkey* (1982), 70 Ohio St.2d 218, 24 O.O.3d 322, 436 N.E.2d 1008. The issue of whether testimony is relevant or irrelevant, confusing or misleading, is best decided by the trial judge who is in a significantly better position to analyze the impact of the evidence on the jury."

We agree with appellant that a defendant may challenge the accuracy of his or her particular breath-alcohol test result. We note, however, that in some instances expert testimony is necessary in order to present and explain to the trier of

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

fact the nature of the particular contention or challenge. Unless a matter is within the comprehension of a layperson, expert testimony is necessary. *Ramage v. Central Ohio Emergency Serv., Inc.* (1992), 64 Ohio St.3d 97, 102, 592 N.E.2d 828, 833; Evid.R. 702 and 703. Experts have the knowledge, training, and experience to enlighten the jury concerning the facts and their opinion regarding the facts. *Id.*; *McKay Machine Co. v. Rodman* (1967), 11 Ohio St.2d 77, 228 N.E.2d 304. Generally, expert opinion evidence is required when the inquiry pertains to a highly technical question of science or skill. See *Jones v. Hawkes Hospital of Mt. Carmel* (1964), 175 Ohio St. 503, 196 N.E.2d 592, paragraph one of the syllabus. A litigant may not introduce into evidence unsubstantiated or unproven scientific arguments or theories.

In the case *sub judice* the trial court determined that absent testimony to indicate how the use of Anbesol could affect the breath-alcohol test results, appellant's proffered evidence is speculative and lacks probative value. We agree with the trial court's conclusion.

In order to advance his theory regarding the effect or impact that the use of Anbesol may have on the breath-alcohol test result, appellant must elicit expert opinion testimony on the subject. Pursuant to Evid.R. 403(A), "although relevant, evidence is not admissible if its probative value is substantially outweighed by the danger of unfair prejudice, of confusion of the issues, or of misleading the jury."

*7 We find no abuse of discretion with the trial court's conclusion that the probative value of appellant's proffered evidence is substantially outweighed by the danger of confusion of the issues and misleading the trier of fact. Arguments in the category advanced by appellant in the instant case must, because of their highly technical and scientific nature, be advanced through expert testimony.

Accordingly, based upon the foregoing reasons we overrule appellant's second assignment of error.

III

In his third assignment of error, appellant asserts that when the trial court found in his favor on the probable cause issue during the ALS proceeding, the doctrines of *res judicata* and collateral estoppel precluded any finding to the contrary during the subsequent criminal proceeding. We disagree with appellant.

In *State v. Williams* (Mar. 20, 1995), Athens App. No 94 CA 1626, unreported, we recently addressed the issue raised in the case *sub judice*. In *Williams,* the trial court determined in an ALS appeal hearing that no reasonable grounds existed to justify an investigatory stop of the defendant. The defendant argued that the trial court should be bound by its ALS determination and, therefore, should have granted his motion to suppress evidence. In *Williams* we noted that procedural differences exist between an ALS appeal hearing and a hearing on a motion to suppress evidence. We pointed out that during an ALS appeal, the issues are not fully litigated to the extent that collateral estoppel will apply to the same issue raised during a motion to suppress evidence.

In *Williams* we wrote:
> "The doctrine of collateral estoppel precludes further action on an identical issue which has actually and necessarily been litigated as part of a prior action among the same parties or those in privity with these parties. *Goodson v. McDonough Power Equip. Inc.* (1983), 2 Ohio St.3d 193. Although originally a civil doctrine, the federal rule of collateral estoppel has been a part of criminal jurisprudence for over three quarters of a century. See *United States v. Oppenheimer* (1916), 242 U.S. 85, 87-88.
> This court has previously held that collateral estoppel does not apply in the context of suppression hearings. *State v. Chelikowsky* (Aug. 18, 1992), Pickaway App. No. 91 CA 27, unreported. This court reasoned that the collateral estoppel rule arose from the guaranty against double jeopardy and, because a motion to suppress does not place one in jeopardy, this rule cannot be relied upon in that context. See *Chelikowsky, supra,* and *State v. McCord* (Fla.1981), 402 So.2d 1147, 1149.
> ALS proceedings under R.C. 4511.191 are civil and administrative in nature. The Ohio Supreme Court has held that these proceedings are independent of any criminal proceeding pursuant to other statutes or ordinances. *State v. Starnes* (1970), 21 Ohio St.2d 38. Therefore, in light of the *Starnes* holding, it would be anomalous to hold that a determination made during an ALS hearing would dictate the outcome of a motion to suppress hearing pertaining to the underlying criminal offense of driving under the influence.
> *8 The reality of the differences between the ALS hearing and a motion to suppress also weigh against finding that collateral estoppel should be applied in this context. As stated above, an ALS proceeding is civil, while a motion to suppress is a criminal proceeding. The purpose behind the ALS appeal is to determine whether or not an alleged offender's license should be restored, while the purpose behind a motion to suppress hearing is to determine whether certain evidence should be allowed at trial. Also, motions to suppress must comply with particularity requirements of Crim.R. 47. *State v. Marion* (1992), 73 Ohio App.3d 752. ALS suspension appeals, on the other hand, are allowed at arraignments by oral motion with little or no notice given to the state as to the particularity of the motion. ALS hearings are also typically scheduled within five days from the arrest of the defendant, which

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

often leaves the state with little time to prepare and to ensure that the proper witnesses can be present. Consequently, many ALS get dismissed based on lack of testimony and not for fully litigating the issues relating to the arrest and detention. Finally, because no written motion is required and no particularity need be stated, the state often does not know what is being attacked at the ALS hearing.

Because of the procedural differences between the ALS appeal and a motion to suppress, it is clear that the issues during an ALS appeal are not fully litigated to the extent that collateral estoppel would then apply to the same issue raised again during a motion to suppress. The purpose of ALS appeal is to decide whether an alleged offender's license should be restored, not what evidence should be allowed during trial. Thus, for all the reasons outlined above, collateral estoppel does not apply in this context, and appellant's first assignment of error is overruled."

Thus, in *Williams* we identified many reasons why the doctrine of collateral estoppel does not apply in this situation. We noted that: (1) collateral estoppel does not apply in the context of suppression hearings; (2) the purpose of an ALS appeal is to determine whether an alleged offender's operator's license should be reinstated, whereas the purpose of a motion to suppress evidence hearing is to determine whether certain evidence will be admissible at trial; and (3) ALS hearings require minimal preparation time and scant notice to the prosecution as to the particularity of the motion, whereas motions to suppress evidence hearings must comply with the Crim.R. 47 requirements. See, also *State v. Roberts* (May 4, 1995), Ross App. No. 93 CA 2020, unreported.

Accordingly, based upon the foregoing reasons, we overrule appellant's third assignment of error.

*JUDGMENT AFFIRMED.*

JUDGMENT ENTRY

It is ordered that the judgment be affirmed and that appellee recover of appellant costs herein taxed.

The Court finds there were reasonable grounds for this appeal.

*9 It is ordered that a special mandate issue out of this Court directing the Chillicothe Municipal Court to carry this judgment into execution.

If a stay of execution of sentence and release upon bail has been previously granted, it is continued for a period of sixty days upon the bail previously posted. The purpose of said stay is to allow appellant to file with the Ohio Supreme Court an application for a stay during the pendency of the proceedings in that court. The stay as herein continued will terminate at the expiration of the sixty day period.

The stay will also terminate if appellant fails to file a notice of appeal with the Ohio Supreme Court in the forty-five day period pursuant to Rule II, Sec. 2 of the Rules of Practice of the Ohio Supreme Court. Additionally, if the Ohio Supreme Court dismisses the appeal prior to the expiration of said sixty days, the stay will terminate as of the date of such dismissal.

A certified copy of this entry shall constitute that mandate pursuant to Rule 27 of the Rules of Appellate Procedure. Exceptions.

STEPHENSON, J.: concurs in judgment & opinion.

HARSHA, J.: dissents with dissenting opinion.

NOTICE TO COUNSEL

Pursuant to Local Rule No. 12, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.

HARSHA, J., dissenting:

I respectfully dissent on the basis of the third assignment of error.

1996 WL 130979 (Ohio App. 4 Dist.)

END OF DOCUMENT

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

Not Reported in N.E.2d
2001-Ohio-1472
(Cite as: 2001 WL 991530 (Ohio App. 2 Dist.))

EXHIBIT 3

Page 1

CHECK OHIO SUPREME COURT RULES FOR REPORTING OF OPINIONS AND WEIGHT OF LEGAL AUTHORITY.

Court of Appeals of Ohio, Second District, Montgomery County.

Michael S. EARL, et al., Plaintiffs-Appellees,
v.
LEIFFER CONSTRUCTION, INC., Defendant-Appellant.

No. 18743.

Aug. 31, 2001.

Steven J. Zeehandelar, Atty. Reg. # 0019561, Columbus, OH, for plaintiff-appellee, Grange Mutual Casualty Co.

Arthur A. Ames, Dayton, OH, for plaintiff-appellee, Michael Earl.

Richard B. Reiling, Atty. Reg. # 0066118, Dayton, OH, for defendant-appellant.

OPINION

FAIN, J.

*1 Defendant-appellant Leiffer Construction, Inc., appeals from a judgment rendered in favor of plaintiffs-appellees Michael S. Earl and his insurer, Grange Mutual Casualty, upon their claim that **Leiffer** failed to repair **Earl's** roof in a workmanlike manner. Leiffer argues that the trial court erred in finding in appellees' favor given their failure to present expert evidence in support of their claim. We disagree. Accordingly, the judgment of the trial court is *Affirmed.*

I

Because we have not been provided with a trial transcript, we take the facts to be as found in the trial court's January 26, 2001 Decision & Entry.

**Leiffer** contracted with **Earl** to repair his roof and chimney for $1,900. On the second day of **Leiffer's** work at **Earl's** house, there was a rainstorm. When Mr. **Leiffer** entered **Earl's** house after the rain, he observed no water damage. On the third and final day of **Leiffer's** work at **Earl's** house, it rained again. Earl found puddles coming out from the drywall, and water stains coming from the living room door. **Earl** paid **Leiffer** $1,200 of the contract price.

Earl's insurance company, Grange Mutual Casualty, paid him a benefit of $792.84 for water damage to his ceilings, door, and living room wall, which had to be repaired, replaced, or repainted. The amount paid was arrived at by subtracting Earl's $250 deductible and the $700 balance due on the contract from the total amount of the damages, $1,742.84. Grange also paid Earl $281.44 for a microwave oven, which was allegedly damaged by the rain. This amount was determined by subtracting from the $531.44 value of the oven the $250 deductible separately applicable to that loss.

Grange and **Earl** brought an action against **Leiffer,** alleging that it had performed its duties in an unworkmanlike manner by failing adequately to protect the interior of the home from rain. Grange sought reimbursement for the benefits it had paid to Earl, and Earl sought reimbursement for his deductibles. Leiffer counterclaimed for the unpaid $700 balance owed on the contract.

A trial was held on the matter in April 2000. We have not been provided with a transcript of the trial. The trial court granted leave for the parties to file proposed findings of fact and conclusions of law. After the parties did so, the trial court issued a decision & entry, concluding that Leiffer was responsible for $1,742.84 in damages done to Earl's house. The trial court awarded Grange $792.84, plus interest and costs for the amounts it had paid to Earl; awarded Earl $250 for his deductible, with interest; and set off Earl's remaining $700 worth of damages against the $700 amount that **Earl** owed **Leiffer** on the unpaid balance of the contract. The trial court rejected Leiffer's argument that the plaintiffs' failure to present expert testimony on the standard of ordinary care precluded judgment in their favor.

Leiffer appeals from the judgment awarded against it.

II
Leiffer's sole assignment of error states:
  *2 THE TRIAL COURT ERRED IN FINDING FOR APPELLEES IN THE ABSENCE OF EXPERT TESTIMONY.

Leiffer argues that the trial court erred in finding for appellees because the question of whether Leiffer exercised ordinary care to protect the interior of Earl's house from rain is a matter beyond the scope of an average person's experience and knowledge.

Once a builder contracts to perform construction work, he has a duty to perform it in a workmanlike manner. [FN1] To prevail on a negligence claim for failure to perform in a workmanlike manner, a plaintiff must show by a preponderance of the evidence that the defendant failed to use ordinary care and skill in performing the work, and that this failure proximately caused his damages. [FN2] In many cases, a plaintiff will have to present expert testimony to prove that a builder has deviated from common standards of workmanship or has failed to exercise ordinary care;

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

Not Reported in N.E.2d
2001-Ohio-1472
**(Cite as: 2001 WL 991530 (Ohio App. 2 Dist.))**

Page 2

however, a plaintiff need not present expert testimony where the issue is not highly technical or scientific in nature, or beyond the experience or knowledge of the average trier of fact. [FN3]

> FN1. *Mitchem v. Johnson* (1966), 7 Ohio St.2d 66, paragraph three of the syllabus.
>
> FN2. *M.L. Simmons, Inc. v. Bellman Plumbing, Inc.* (July 6, 1995), Cuyahoga App. No. 67832, unreported.
>
> FN3. *Floyd v. United Home Improvement Ctr., Inc.* (1997), 119 Ohio App.3d 716, 721-722.

The issue of whether a matter is so highly technical or scientific in nature, or beyond the experience or knowledge of the average trier of fact that it requires expert testimony, is fact-sensitive. In this case, it does not appear that a transcript of the hearing held on the matter was ever prepared. In any event, Leiffer has not filed a transcript of the trial, nor has it filed a statement of the evidence or proceedings, nor an agreed statement of the case, pursuant to App.R. 9(C) or (D). Nevertheless, Leiffer argues that it was necessary for an expert in the construction field to testify about whether the measures it took to protect the interior of Earl's house from rain fell below the ordinary standard of care in the industry, because the issue is beyond the experience or knowledge of the average person. We disagree.

The only facts that can be considered for purposes of appellate review are those found in the trial court's January 26, 2001 Decision & Entry. The trial court did state that Leiffer testified that "it was his practice to put a tarp and temporary roof on to protect the interior of a home from rain[.]" Assuming that Leiffer did so in this instance, this evidence still does not establish that appellees were required to present expert testimony to prove their negligence claim. Even if Leiffer placed a temporary roof and tarp on Earl's house to protect its interior from rain, Leiffer was still under an obligation to use reasonable care and skill in taking those protective measures. The fact that the premises were still water-damaged, notwithstanding the protective measures Leiffer took, gives rise to a reasonable inference that Leiffer did not use ordinary care in installing the temporary roof or tarp on the premises.

In the absence of any evidence in the record to the contrary, we decline to hold that the issue of the proper standard of ordinary care for protecting a dwelling while the roof is undergoing repairs is highly technical or scientific, or, as Leiffer asserts, beyond the experience and knowledge of the average trier of fact. Had there been evidence presented that Leiffer installed the temporary roof and tarp with reasonable care and skill, but that the rainstorms that occurred were unusually or unexpectedly severe, then it might have been necessary for appellees to present expert testimony to establish their negligence claim. In the absence of that type of evidence, we cannot fault the trial court for finding that expert testimony was unnecessary under the circumstances of this case, including the absence of a transcript of the proceedings that might suggest the necessity of expert testimony on the issue of the standard of ordinary care.

\*3 Leiffer's sole assignment of error is overruled.

III

Leiffer's sole assignment of error having been overruled, the judgment of the trial court is *Affirmed*.

BROGAN and YOUNG, JJ., concur.

2001 WL 991530 (Ohio App. 2 Dist.), 2001-Ohio-1472

END OF DOCUMENT

Not Reported in N.E.2d
(Cite as: 1987 WL 8229 (Ohio App. 11 Dist.))

**C**

Only the Westlaw citation is currently available.

CHECK OHIO SUPREME COURT RULES FOR REPORTING OF OPINIONS AND WEIGHT OF LEGAL AUTHORITY.

Court of Appeals of Ohio, Eleventh District, Lake County.

MANUFACTURING MANAGEMENT SYSTEMS, INC., Plaintiff-Appellant, Plaintiff-Appellee,
v.
DATA SOLUTIONS, INC., Defendant-Appellee, Defendant-Appellant.

No. 11-074/76.

March 20, 1987.

Civil Appeal from Lake County Common Pleas Court, Case No. 83 CIV 0278.

David H. Davies, Davies, Rosplock, Coulson, Perez, Deeb & Harrell, Willoughby, for plaintiff-appellant.

David J. Pasz, Kraig & Pasz, Cleveland, for defendant-appellee.

Before LYLE W. CASTLE, Ret., 12th, RICHARD B. McQUADE, JR., Fulton Common Pleas, and MELVIN RESNICK, Lucas Common Pleas, Assigned by the Supreme Court to The Eleventh District.

OPINION

RESNICK, Judge.

*1 This appeal is before this Court from a judgment of the Lake County Common Pleas Court. On March 21, 1983, appellant Manufacturing Management Systems, Inc. (hereinafter MMS) filed a complaint alleging that they had entered into a contract with appellee, Data Solutions, Inc. (hereinafter DSI) pertaining to a joint marketing agreement of March 1, 1982. On January 20, 1984, MMS filed an amended complaint wherein they alleged the same contract having been entered between MMS and DSI and that DSI breached this contract by failing and refusing to meet its obligations under the contract in that they refused to return to MMS the software transmitted to DSI and further by failing to turn over to MMS any and all modifications and derivative works in accordance with the above mentioned contract.

MMS sought injunctive relief and damages for breach of contract and fraud. DSI filed an answer and counterclaim also alleging breach of contract. The case was tried to the Court on January 16, 1985, wherein the Court entered judgment for DSI on the amended complaint, and judgment was entered for MMS on the counterclaim of DSI.

It is from that judgment which MMS filed a timely notice of appeal asserting the following as its sole assignment of error:

"The trial court erred to the prejudice of Plaintiff-Appellant by relying on a lay dictionary definition of a word with a specialized meaning in a highly technical field and further by isolating and enforcing specified parts of the contract by giving validity or special definition to specific words contained therein while excluding or ignoring words within the same sentence."

DSI also filed a timely notice of appeal as to the judgment on its counterclaim, asserting the following assignment of error:

"The trial court erred to the prejudice of the Defendant-Appellant in finding that the Defendant-Appellant's sole contribution to the Joint Marketing Agreement was the conversion of software when the contract manifests a different intention."

Prior to a consideration of the foregoing assignments of error it is necessary to briefly review the facts of the case before us.

On or about March 1, 1982, MMS and DSI entered into an agreement whereby MMS would provide computer software to be converted by DSI into a format suitable for use by DSI on its micromation mini-computer. The end product would then be sold as a "Turnkey system".

In April 1982 MMS delivered to DSI its software, and DSI shortly thereafter began the process of converting the same to make it compatible with the hardware of DSI.

On May 12, 1982 the parties entered into a proprietary rights agreement restricting unauthorized use and disclosure by DSI of the original MMS software or any conversion thereof. DSI continued with its conversion process until November 23, 1982, when MMS wrote DSI of its intent to cancel the agreement. MMS requested the return of its original software along with any modifications and derivative works as per the agreement of March 1, 1982. DSI tendered the original hard discs which it had received from MMS, and a current source code listing which documented all changes which had been made to the date of cancellation. MMS demanded delivery of all modifications that had been made to its software in machine readable form. DSI refused, contending that it had none since it had

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

Not Reported in N.E.2d
(Cite as: 1987 WL 8229 (Ohio App. 11 Dist.))

Page 2

deleted all copies of MMS software from its computer library and that all listings and documentation had been destroyed.

*2 The trial court, in interpreting the contract, looked to Webster's Seventh New Collegiate Dictionary (1969) for guidance in defining the term "derivative works" which was used in the contract. MMS contends that the latter is a technical term and, therefore, expert testimony is required to define the term in relation to its meaning in the computer industry. Thus, they claim it was error for the trial court to rely on a lay dictionary for its definition. The Court in *Madden v. American News* (1967) 11 Ohio Misc. 119, at 120 stated:

"a word having a technical legal sense will be so construed, unless a different intention is clearly expressed." "18 Ohio Jurisprudence 3d 28, Contracts, Section 143"

In *Ajax Petroleum Products Co. v. Blake* (App) 70 O.L.Abs., 126 NE 2 926 it was expressed that:

"Where a word has a special meaning in a particular business it must be interpreted as ordinarily used in that business. 18 Ohio Jurisprudence 3d 28, Contracts, Section 143."

And in *Mose Cohen & Sons, Inc. v. Kuhr* (CP) 13 OO2d 453, 85 O.L.Abs. 302 aff'd (App) 13 OO2d 460, 171 NE2d 216, m.c.o. 10/13/60, it was held that:

"A word having a technical legal sense will be so construed, unless a different intention is clearly expressed. So, too, a term or phrase which has a technical meaning in the business to which the contract relates will be interpreted according to that meaning unless a contrary intention is expressed." 11 O.J. 2nd, p. 386, Sec. 141. See also: Central National Bank v. Bennett, 33 Ohio App. 396, 169 N.E. 707, Syl. par. 2; Henderson v. Liverpool & London & Globe Insurance Co., 26 Ohio N.P., N.S., 103, at top of page 106 of the opinion."

Additional aid in the interpretation of words is discussed in the Restatement of Law Second, Contracts 2nd, Section 202, wherein it is stated in pertinent part that:

"(1) Words and other conduct are interpreted in the light of all the circumstances, and if the principal purpose of the parties is ascertainable it is given great weight.

(2) A writing is interpreted as a whole, and all writings that are part of the same transaction are interpreted together.

(3) Unless a different intention is manifested,

(a) where language has a generally prevailing meaning, it is interpreted in accordance with that meaning;

(b) *technical terms and words of art are given their technical meaning when used in a transaction within their technical field.*" (emphasis added)

In the case sub judice we are involved in the area of computer and software contracts, a high technology and specialized field with a language all its own. Therefore, in order to intelligently interpret the words "derivative works" in conjunction with the specialized field from which it is derived, the trier of the facts must resort to expert testimony inasmuch as they must be considered as words of art and be given their technical meaning.

It is well established that "contracts are to be interpreted so as to carry out the intent of the parties, as that intent is evidenced by the contractual language." *Skirolock v. East Ohio Gas Co.* (1974) 38 O.S.2d 244, 247. Appellant MMS contends that expert testimony is required to define technical terms, and we agree. However, the record is devoid of any such expert testimony, and it was the burden of the Plaintiff MMS to produce the expert testimony to establish its claim that "derivative works" did not mean "completed works".

*3 It is generally held that parol evidence can be introduced to explain technical terms. Although Ohio courts have not specifically addressed this question, reference to other jurisdictions is enlightening. The court in *Sierra Life Ins. Co. v. First National Life Ins. Co.* (1973) 512 P.2d 1245, 1247, stated:

"Parol evidence may be received to explain technical terms used in a written contract, and is always admissible to define and explain the meaning of words or phrases in a written instrument which are technical or where a word or phrase is used in a peculiar sense that is applicable to a particular industry or trade. Hartford Steam Boil. Insp. I. Co. v. Schwartzman Pack. Co., 423 F.2d 1170 (10th Cir.1970). See also 30 Am.Jur.2d Evidence Sec. 1075; 32A C.J.S. Evidence Sec. 962."

Plaintiff's president on cross examination testified as to his interpretation of "derivative works", but he acknowledged that he was no expert in software products and, therefore, this court must hold that Plaintiff failed in its burden of proof to establish that "derivative work" meant anything more than a completed product as found by the trial court. We therefore hold that any error by the trial court in using a lay definition of "derivative works" was non-prejudicial, and the judgment of the trial court on the Plaintiff's complaint is hereby affirmed. [FN1] (see footnote at bottom of Page 7)

Proceeding now to a consideration of DSI's assignment of

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

Not Reported in N.E.2d
(Cite as: 1987 WL 8229 (Ohio App. 11 Dist.))

Page 3

error wherein it is contended that the trial court erred in determining that DSI's sole contribution to this joint marketing venture was the conversion of software.

For a determination of this issue we must consider Paragraph three (3) of the letter of agreement. This is the only place where any discussion of compensation is discussed in any finalized agreement, other than Paragraph four (4) and five (5) of the same letter of agreement. However, Paragraphs 4 and 5 clearly pertain to sales only. Paragraph three (3) provides:

"The professional service capability of MMS and DSI will be *made available to each other, and to end-user customers of both firms on a normal hourly rate basis, as will be mutually agreed upon* from time to time." (emphasis added)

This paragraph is sufficiently clear. There is no evidence in the record that at the time of the execution of the agreement there was ever any intention of the parties that DSI would be compensated for the conversion process. The Supreme Court of Ohio stated in *Alexander v. Pipe Line* (1978) 53 OS2d 242 that:

"... where the terms in an existing contract are clear and unambiguous, this court cannot in effect create a new contract by finding an intent not expressed in the clear language employed by the parties. Paragraph one of the syllabus in Blosser v. Enderlin (1925), 113 Ohio St. 121; Fidelity & Casualty Ins. Co. v. Hartzell Bros. Co. (1924), 109 Ohio St. 566, 569."

Therefore, from the terms of the contract there is nothing to indicate an intent to compensate DSI for any services in conversion of the software. DSI's compensation was to come from the sales of the turnkey operation and any additional services provided by them after the sale. The exhibits submitted during the period of dissatisfaction on the part of MMS do not indicate or satisfy any mutually agreed to completed contract or amended contract for payment of services during the conversion process. The negotiations at that time were not finalized and, therefore, not binding on either party.

*4 For the reasons above the assignment of error by DSI is found not well taken and overruled, and the judgment of the trial court in that regard is hereby affirmed.

> FN1. The Court notes that it would appear that the software or computer program involved in these causes is subject to Copyright law, to-wit, the Copyright Act of 1976, Public Law 94-553 (90 STAT 2541). In Section 101 thereof derivative works is defined. A reading thereof appears to be in agreement with the definition that the trial judge used.

1987 WL 8229 (Ohio App. 11 Dist.)

END OF DOCUMENT

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works