UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| CONVERGYS INFORMATION MANAGEMENT GROUP INC., et al., | : : : | Case No.: C-1-01-618 |
| Plaintiffs, | : : | Magistrate Judge Hogan |
| V. | : : : : : : | **PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION *IN LIMINE* TO PROHIBIT PLAINTIFFS FROM OFFERING EXPERT TESTIMONY** |
| IGATE CORPORATION, et al., | : : | |
| Defendants. | : | |

Plaintiffs Convergys Information Management Group Inc. ("Convergys IMG") and Chubb Custom Insurance Company ("Chubb") (collectively "Plaintiffs"), by counsel, submit their Memorandum in Opposition to Defendants' Motion *in Limine* to Prohibit Plaintiffs From Offering Expert Testimony ("Motion").

Defendants' Motion should be denied for at least four reasons. First, the testimony at issue constitutes lay opinion testimony that is admissible under Federal Rule of Evidence 701. Second, even should the Court consider the testimony at issue expert testimony, Plaintiffs have complied with the portions of Rule 26 that apply to fact or "hybrid" witnesses. Third, Defendants have suffered absolutely no harm, and indeed have had multiple opportunities to depose the witnesses about which they complain and have asked them opinion-related questions. And finally, Defendants have not established factually or legally that any spoliation occurred.

I.     INTRODUCTION

This lawsuit arises out of certain computer programming work performed for Convergys IMG by Ragesh Rao ("Rao"), an employee of Defendants. (*See generally* Plaintiffs' Second Amended

Complaint). On September 17, 1999, the database that Convergys IMG maintained for a large customer, Sprint, crashed when certain data files became corrupted. (Koopmans Depo., Vol. 1, at 213; Brown Depo., Vol. 1, at 50, 57-58).[1] Convergys IMG undertook an investigation to determine the cause of the corruption. Convergys IMG also began efforts to restore the database and to recover lost data. (*See generally* Plaintiffs' Second Amended Complaint).

Convergys IMG's investigation ultimately revealed that Rao's actions were responsible for causing the database outage, and that Rao took certain actions to "cover up" the activities that caused the database crash. (*See id.*). As a result of the database outage, Sprint made a claim for damages, which Convergys IMG settled for approximately $938,000. As a result of the database outage, Convergys IMG's personnel also spent approximately 3,000 hours recovering and attempting to recover the lost data.

Bill Koopmans and Darin Brown are employees of Convergys IMG and are, primarily, fact witnesses in this litigation. They were both involved in the investigation, restoration, and recovery efforts associated with the September 17, 1999 database outage. They are both witnesses with highly technical backgrounds. Mr. Koopmans is a mechanical engineer, who completed all the graduate course work in mechanical engineering. (Koopmans Depo., Vol. 1, at 9). During the course of his employment with Convergys, he has taken classes dealing with Oracle database administration and software development quality processes. (*Id.* at 10-13). Similarly, Mr. Brown has a degree in computer science. (Brown Depo., Vol. 2, at 11). Mr. Brown has taken classes from Oracle Corporation on a variety of subjects. (*Id.* at 12-13). He has received training in Unix. (*Id.* at 13). Mr. Brown has taken C programming courses. (*Id.*). He was certified by Oracle as a database administrator. (*Id.* at 14).

---

[1] The pages of Koopmans' deposition to which Plaintiffs cite in support of their Memorandum are attached as Exhibit A. The pages of Brown's deposition to which Plaintiffs cite in support of their Memorandum are attached as Exhibit B.

## II.  LAW & ARGUMENT

Initially, while Defendants correctly state that Plaintiffs have asserted claims for breach of contract and fraud, among other causes of action, they incorrectly conclude that Plaintiffs "must necessarily demonstrate that Rao was negligent in performing the services he rendered on September 17, 1999." (*See* Defendants' Motion, p. 7). There is no negligence claim in this case. Pursuant to the contract between the parties, Defendants warranted that Rao "shall perform the services constituting or comprising the Work with the highest degree of skill and care required by customarily accepted good and sound professional practices and procedures to ensure that they are correct and fit for the purpose intended and in accordance with prevailing standards of loyalty and ethical conduct." (*See* Exhibits C and D attached hereto, Article 3). Moreover, Defendants agreed to indemnify Convergys IMG for all claims "due to the acts or omissions of Consultant or anyone acting under its direction or control or in its behalf and all expenses (including legal and investigation fees) incidental thereto." (*See id.* at Article 4). Thus, to show a breach of contract, it is only incumbent upon Convergys to demonstrate either: (1) a breach of warranty of "the highest degree of skill and care"; or (2) losses due to the acts or omissions of Rao. None of Plaintiffs' claims require a showing of negligence.

### A.  The Testimony At Issue is Lay Opinion Testimony That is Admissible Under Federal Rule of Evidence 701.

Defendants' Motion suffers from at least one fundamental flaw. Defendants equate any type of opinion testimony, including opinions on causation, with expert testimony. The Federal Rules of Evidence reject this central premise of Defendants' Motion.

Federal Rule of Evidence 701 provides:

> If the witness is not testifying as an expert, the witness' testimony in the form of opinions or inferences is limited to those opinions or inferences which are: (a) rationally based on the perception of the witness, (b) helpful to a clear understanding of the

witness' testimony or the determination of a fact in issue, and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702.²

*See generally Torres v. County of Oakland*, 758 F.2d 147, 149-50 (6th Cir. 1985). Thus, a mere claim that testimony consists of opinion testimony does not render it inadmissible. *Teen-Ed Inc. v. Kimball Int'l., Inc.*, 620 F.2d 399, 403 n.4 (6th Cir. 1980).

Courts now recognize a trend towards a liberal construction of Rule 701. *Wilburn v. Maritrans GP Inc.*, 139 F.3d 350, 355 (3rd Cir. 1998). The "modern trend favors the admission of opinion testimony, provided that it is well founded on personal knowledge and susceptible to specific cross-examination." *Teen-Ed*, 620 F.2d at 399. As the Third Circuit explained in *Wilburn*:

> '[Rule 701] jurisprudence has expanded beyond this core area to permit lay persons to express opinions that are not shorthand statements of fact, so long as the personal knowledge, rational basis, and helpfulness standards of Rule 701 are met.' The rational basis prong requires that the witnesses' opinion be 'grounded in either experience or specialized knowledge.'
>
> Today, **'[a] lay witness with first hand knowledge can offer an opinion akin to expert testimony in most cases, so long as the trial judge determines that the witness possesses sufficient and relevant specialized knowledge or experience to offer the opinion.'** 'The essential difference between [Rule 701 and 702 testimony] . . . is that a qualified expert may answer hypothetical questions.'

*Wilburn,* 139 F.3d at 355-56 (emphasis added) (internal citations omitted).

The Eleventh Circuit's recent opinion interpreting Rule 701 in *Tampa Bay Shipbuilding & Repair Co. v. Cedar Shipping Co.*, 320 F.3d 1213 (11th Cir. 2003) is also instructive. In *Tampa Bay*, defendant filed a motion in limine seeking to exclude opinion testimony from certain lay witnesses,

---

² As the Eleventh Circuit explained in *Tampa Bay Shipbuilding & Repair Co. v. Cedar Shipping Co.*, 320 F.3d 1213, 1221 (11th Cir. 2003), Rule 701 was amended in 2000 to include subsection (c). As the Advisory Committee's Notes explain, prior to the amendment, most courts permitted business owners and officers to testify to opinions based upon "the particularized knowledge that the witness has by virtue of his or her position in the business," and the amendment to Rule 701 "does not purport to change this analysis." *Id.* at 1222 (citing Advisory Committee's Notes to Rule 701).

which the district court denied. *Id.* at 1216. Some of the lay witnesses' testimony concerned industry standards and the reasonableness of rates in the industry. *Id.* at 1217, 1220.

As the Eleventh Circuit explained in *Tampa Bay*, the Advisory Committee's Notes to Rule 701 explain that:

> [M]ost courts have permitted [owners and officers] to testify . . . without the necessity of qualifying the witness as an . . . expert. Such opinion testimony is admitted not because of experience, training or specialized knowledge within the realm of an expert, but because of the *particularized knowledge that the witness has by virtue of his or her position in the business.* . . .

*Id.* at 1222 (emphasis in original). The Eleventh Circuit in *Tampa Bay* affirmed, holding that the lay witnesses "testified based upon their particularized knowledge garnered from years of experience within the field. Their testimony was helpful to the district judge and relevant to the issues presented in the case." *Id.* at 1223; *see also Allied Systems, Ltd. v. Teamsters*, 304 F.3d 785, 792 (8th Cir. 2002) (permitting bookkeeper employee to testify on damages where his testimony was limited to his knowledge obtained as the bookkeeper and from a field audit he conducted); *Teen-Ed*, 620 F.2d at 403 (holding that the personal knowledge of a company's balance sheets acquired by a lay witness in his capacity as the company's accountant was clearly sufficient under Rule 701 to permit him to testify to his opinion of how lost profits could be calculated); *Hartzell Mfg., Inc. v. American Chem. Techs., Inc.*, 899 F. Supp. 405, 408 (D. Minn. 1995) (perceptions based upon industry experience are a sufficient foundation for the admission of lay opinion testimony).

Thus, the above cases stand for a couple of important propositions. First, construing Rule 701 liberally as it should be, lay witnesses can offer opinion testimony akin to expert testimony so long as the witnesses possess sufficient and relevant knowledge or experience to offer the opinions. Second, in determining whether the witnesses possess sufficient and relevant knowledge or experience, courts should look to the witnesses' position in the business and experience in the field.

Koopmans and Brown clearly meet these criteria for their testimony, including testimony on causation, to be admitted under Rule 701. Koopmans and Brown have, combined, at least 25 years experience in the information technology industry. (Brown Depo., Vol. 2, at 11-20; Koopmans Depo. Vol. 1, at 11-17). They are eminently familiar with the Sprint data base at issue based upon, among other things, the fact that they work with it every day as part of their job duties with Convergys IMG. Mr. Brown has been trained in Oracle and Unix and has taken programming courses. (Brown Depo., Vol. 2, at 12, 13). Mr. Koopmans is a mechanical engineer who has taken Oracle database administration and software development classes. (Koopmans Depo., Vol. 1, at 10-13). There are few, if any, witnesses who have more personal knowledge and experience with the Sprint database at issue than Koopmans and Brown. Whatever opinion testimony that Convergys IMG offers at trial relating to the cause of the database outage or other issues will be grounded in the witnesses' experience or personal knowledge as Convergys IMG's employees who work with the database on a regular basis, such that it qualifies for admission under Rule 701.

> **B.** **To the Extent the Court Determines That the Testimony At Issue is Expert Testimony, It Is Still Admissible Because Plaintiffs Complied With the Applicable Portions of Rule 26.**

It is unclear from Defendants' Motion what testimony they contend constitutes expert testimony, other than causation testimony. Defendants offer no such examples of alleged expert testimony. Therefore, it is difficult for Plaintiffs to respond to vague allegations that they intend to offer expert testimony (and for the Court to analyze such allegations), when Defendants do not even cite to any such alleged testimony. Nevertheless, although Plaintiffs contend that any such testimony constitutes lay opinion testimony that is admissible under Rule 701, should the Court consider it expert testimony, it is still admissible.

Defendants first argue that expert testimony "is clearly required to prove the claims presented by plaintiffs in this litigation, and in particular, the elements of causation associated with those claims." (*See* Defendants' Motion, p. 9). Defendants appear to base this aspect of their argument on the highly technical nature of the issues before the Court. To reiterate, who better to offer testimony on the highly technical issues before the Court than the employees with highly technical backgrounds who work with the database at issue on a daily basis? Moreover, Defendants answer their own argument on this issue when they admit that "Rule 26 specifically contemplates that parties may use their own employees as experts." (*See id.* at p. 11). Rule 26 expressly permits Convergys to use its own employees to offer alleged expert testimony. To require Convergys to hire an outside expert who would be, by definition, less familiar with the database at issue would be fundamentally counterintuitive and is not required by Rule 26.

Defendants then proceed to argue that Plaintiffs were required to "timely provide the specifics of the expert opinions and grounds for those opinions in accordance with the standards of Rule 26." (*See id.*). Defendants summarily conclude that "[m]erely identifying present or former employees in their Witness List/Testimony Summary who may offer testimony on a variety of issues, including causation . . . can hardly be said to have satisfied plaintiffs' disclosure obligations." (*See id.*). Defendants are simply wrong about this, as made clear by Federal Rule 26 and the cases discussed below.

The express language of Federal Rule 26(a)(2)(B) applies to two categories of witnesses: (1) witnesses who are "retained or specially employed to provide expert testimony"; and (2) witnesses "whose duties as an employee of the party regularly involve giving expert testimony." Fed. R. Civ. P. 26(a)(2)(B). As the district court stated in *Sullivan v. Glock*, *Inc.*, 175 F.R.D. 497, 500 (D. Md. 1997), while "[i]t is very common in modern litigation to find fact witnesses who also possess the requisite

expertise required by Fed. R. Evid. 702 to permit them to give expert opinion testimony . . . Rule 26(a)(2)(A) does not require disclosure of anything more than their identity . . ."  Moreover, the district court in *Sullivan* stated:

> The written report required by Rule 26(a)(2)(B) is inapplicable to hybrid [i.e., fact/expert] witnesses, and counsel must be prepared to obtain information about the opinions and bases of their testimony by interrogatories and/or depositions.  The failure to pursue these alternative means of discovering the expected opinion testimony of hybrid witnesses is not a basis for excluding that testimony at trial.

*Id.* at 506.

Thus, contrary to Defendants' argument, Federal Rule 26(a)(2)(B) does not require that all expert testimony be preceded by an expert report, and the case law is consistent with the Federal Rule.  For example, In *In Re: Tess Communications, Inc.*, 291 B.R. 535, 537 (D. Colo. 2003), defendant argued that Federal Rule 26(a)(2)(B) did not apply to witnesses whose opinion testimony arose out of their personal knowledge of the facts of the case.  The court agreed, holding that the Rule 26 report requirement "does not apply to fact witnesses who also qualify to give expert opinions that are offered in the limited context of their direct, personal knowledge, as actors or viewers of the facts of the particular case."  *Id.*; *see also Day v. Consolidated Rail Corp.*, 1996 U.S. Dist. LEXIS 6596 **6-7 (S.D.N.Y. 1996) ("Although Rule 26(b)(4)(A), governing depositions of experts, appears to imply that some category of experts may be exempt from the report requirement, that exemption is apparently addressed to experts who are testifying as fact witnesses, although they may also express some expert opinions . . ." (copy attached as Exh. E); *Wreath v. United States*, 161 F.R.D. 448, 450 (D. Kan. 1995) (interpreting Rule 26(a)(2)(B) to apply only to those witnesses "retained or specially employed" to provide expert testimony).

Similarly, in *Navajo Nation v. Norris*, 189 F.R.D. 610 (E.D. Wash. 1999), the district court addressed the same issue of whether Federal Rule 26(a)(2)(B) applies to employee-experts.  The district

court in *Norris* determined that there were "two categories of experts from whom reports are required[:] one comprising non-employees of a party especially retained or employed for the particular case and one comprising employees of a party who regularly testify for the employer party." *Id.* at 612. Because the employee-experts at issue were not regularly used as expert witnesses and were not retained or specially employed to provide expert testimony, the district court in *Norris* refused to prevent plaintiff's employee experts from testifying. *Id.* at 613.

The district court in *Sprague v. Liberty Mutual Ins. Co.*, 177 F.R.D. 78 (D.N.H. 1998) perhaps best explained the rationale for the distinction made in Federal Rule 26(a)(2)(B) between retained and unretained experts: "[t]he unretained experts, who formed opinions from pre-litigation observation, invariably have files from which any competent trial attorney can effectively cross-examine." *Id.* at 81. However, the retained expert "has no such files and is thus required to provide the report to enable effective cross-examination." *Id.*

None of the Convergys IMG witnesses who will testify at trial were retained or specially employed to provide expert testimony. None of them have duties as employees of Convergys IMG involving regularly giving expert testimony. Rather, they are all fact witnesses, some of who may have sufficient personal knowledge or experience to offer lay or expert opinion testimony. Rule 26(a)(2)(B) simply has no application to these fact or hybrid witnesses.

All that Rule 26 requires with respect to Convergys IMG's fact or hybrid witnesses is that their identities be disclosed. *See Sullivan*, 175 F.R.D. at 500. Convergys IMG satisfied this obligation in its January 2003 Witness List/Testimony Summary when it identified Koopmans and Brown as witnesses who may offer testimony on, among other things, issues involving "the cause of the database corruption." (*See* Docket, Doc. #30). It was then incumbent upon Defendants' counsel to obtain information about the opinions and bases of their testimony by interrogatories and/or depositions. *See*

9

*Sullivan*, 175 F.R.D. at 506. Defendants' failure to pursue these discovery avenues (until just recently) is not a basis for excluding such testimony at trial. *Id.*[3]

### C. Any Alleged Failure to Comply with Rule 26 is Utterly Harmless to Defendants.

Defendants next suggest that excluding any alleged expert testimony is "mandatory" under Rule 37. (*See* Defendants' Motion, p. 12 n.4). Defendants' argument ignores the plain language of Rule 37, and is contradicted by the case law interpreting Rule 37.

The plain language of Rule 37 contains exceptions for substantial justification and for harmlessness. Fed. R. Civ. P. 37(c). To reiterate, Convergys IMG satisfied any requirements of Rule 26(a) that apply to fact/hybrid witnesses when it identified Koopmans and Brown in January 2003 as witnesses who may offer testimony on, among other things, issues involving "the cause of the database corruption." (*See* Docket, Doc. #30). Convergys IMG's witnesses are, primarily, fact/hybrid witnesses who were personally involved in the investigation, restoration and recovery of the corrupted database at issue. They are not experts as that term is traditionally used, which is why Convergys IMG identified them in the manner that it did. However, as discussed above, Defendants' argument that these fact/hybrid witnesses cannot offer opinion testimony under Rule 701, or expert testimony if the Court decides it should be labeled as such, is misguided.

In addition, the alleged failure to comply with Rule 26, to the extent it even applies to these witnesses, is utterly harmless to Defendants. Rule 37 sanctions are appropriate only for "willful and substantial abuse of the discovery process." *Sullivan*, 175 F.R.D. at 504. As the Sixth Circuit stated in

---

[3] *See also Griffith v. General Motors Corp.*, 303 F.3d 1276, 1283 (11th Cir. 2002) (affirming the district court's denial of plaintiff's motion in limine, because plaintiff "allowed this impasse to continue well beyond the point of good faith efforts to resolve the issue without court intervention, *never* moving for an order requiring any more detailed response under Rule 26.") (emphasis added); *Harvey v. District of Columbia*, 949 F. Supp. 874, 877 (D.C. Dist. 1996) (denying defendant's motion to strike certain opinion testimony, finding that "[h]ad the defendants promptly communicated with the plaintiff, they could have met and conferred about the report and still would have had time to file a motion to compel production of a supplemental report or could have noticed Dr. Berry's deposition at any time).

*Sommer v. Davis*, 317 F.3d 686, 692 (6th Cir. 2003), harmlessness is the key issue under Rule 37. The Advisory Committee's Note to Rule 37(c) "strongly suggests that 'harmless' involves an honest mistake on the part of a party coupled with sufficient knowledge on the part of the other party." *Id.* at 692 (citation omitted). In *Sullivan*, the district court considered four factors in analyzing whether there was substantial justification for the failure to disclose or harmlessness to the opposing party: (1) the importance of the excluded testimony; (2) the explanation of the party for its failure to comply with the required disclosure;[4] (3) the potential prejudice that would arise from allowing the testimony; and (4) the availability of a continuance to cure such prejudice. *Sullivan*, 175 F.R.D. at 507. Another factor courts consider in analyzing harmlessness is whether the opposing party had a chance to depose the witness. *Spearman Industries, Inc. v. St. Paul Fire & Marine Ins. Co.*, 138 F. Supp.2d 1088, 1095 (N.D. Ill. 2001).

Applying these factors to the instant case, it is apparent that Defendants have suffered absolutely no harm from any alleged failure to comply with Rule 26. Defendants have known since January 2003 that witnesses Koopmans and Brown intended to offer testimony on, among other things, the cause of the database outage. Never once did they write or otherwise communicate with Plaintiffs' counsel to seek a more specific description of what these witnesses were going to testify to or to protest the method of disclosure utilized by Plaintiffs' counsel.

Even more significantly, Defendants have deposed Koopmans twice and Brown twice. During these depositions, Defendants' counsel not only had the opportunity to ask whatever questions they wanted of these witnesses, they actually asked these witnesses questions about their opinions. Simply as a few examples, Mr. Brown was asked whether certain documents "reflect, in your opinion, any

---

[4] In analyzing the second factor, the court may consider, among other issues, whether opposing counsel wrote to request the required disclosure or protest the adequacy of the disclosure given and whether the information required by disclosure was provided to opposing counsel by some other discovery method. *Sullivan*, 175 F.R.D. at 507.

entry or activity by Mr. Rao which resulted in an editing or amendment of the keystroke logs or shell histories?" (Brown Depo., Vol. 1, at 142-43). Mr. Brown was asked questions whether there were any entries in particular documents that he believed were "significant for purposes of determining the cause or possible cause or causes of the September 17th, 1999 production database corruption, or of any alleged coverup type activities by Mr. Rao with respect to those events?" (Brown Depo., Vol. 2, at 59-62). Mr. Brown was also asked questions about whether he had ever considered Mr. Rao's explanation for the database outage. (*Id.* at 62-63). Brown's and Koopmans' depositions are also replete with questions about the meaning and significance of various commands in various alert logs and keystroke histories. Defendants clearly asked opinion-type questions of Convergys IMG's witnesses during depositions. Defendants' argument that Convergys IMG's witnesses should not be able to offer the same type of opinion testimony at trial should be rejected for this reason as well.

**D.     The Doctrine of Spoliation Does Not Apply Factually or Legally.**

Defendants' last argument in support of their Motion is that Convergys IMG's "failure to preserve the keystroke logs or other electronic records of the contemporaneous conduct of [certain] DBA's and computer professionals" somehow constitutes spoliation. (*See* Defendants' Motion, p. 12). Defendants' spoliation argument is deficient both factually and legally, and should be rejected.

The key fact that Defendants omit from their Motion is that in September 1999, Convergys' computer system was designed to retain only the most recent commands typed by its database administrators. (Brown Depo., Vol. 1, at 238). This means that as soon as any particular database administrator typed in new lines of commands, an equal number of the oldest lines of commands were overwritten in the ordinary course of business.[5] The keystroke logs about which Defendants complain that would show what Convergys IMG's employees were doing during the time period September 17th,

---

[5]     Therefore, it is not accurate for Defendants to state that Convergys IMG destroyed anything. Instead, Convergys did not preserve the keystroke logs of database administrators other than Rao.

1999 through September 21, 1999 may very well not have existed by the end of the week of September 20th, 1999, or even earlier. They surely did not exist at any time remotely close to when this lawsuit was filed in September 2001.

This fact is critical and fatal to Defendants' spoliation argument because, by Defendants' own admission, they must prove that at the time the documents were in existence, Convergys IMG was contemplating litigation against Defendants. (*See* Defendants' Motion, p. 12). Defendants make the conclusory, unsupported assertion that "it is only logical that Convergys knew at the time it permitted the destruction of the contemporaneous keystroke logs and other electronic records of its other DBA's and computer professionals from that day that it was contemplating litigation against defendants." (*See id.* at p. 13). Notably, they cite to no record evidence in support of this assertion, because the record evidence is to the contrary. Mr. Koopmans, the Convergys IMG manager of the personnel investigating and remedying the database outage, expressly testified that during the week of September 20th, 1999 he was not contemplating filing a lawsuit against Defendants. (Koopmans Depo., Vol. 1, at 151-52).[6]

Indeed, it was not until September 2001 that Convergys IMG filed this lawsuit. It was not until January 2000 that Convergys IMG sent its first written correspondence to Defendants regarding the claims. The documents about which Defendants complain had long since been overwritten in the ordinary course of business by Convergys' computer system for reasons entirely unrelated to contemplated litigation against Defendants.

Defendants also cannot demonstrate another requirement of a spoliation claim, namely that Plaintiffs' "experts" had an opportunity to examine the unaltered evidence. Rather, Convergys'

---

[6] Defendants actually try to make affirmative use of this same fact that they ignore in this Motion in a second Motion *in Limine* they filed. In their Motion *in Limine* Regarding Certain Notes Prepared by Convergys Employee Bill Koopmans, Defendants argue that Koopmans' handwritten notes do not fall within the work product doctrine because Koopmans "was not contemplating that Convergys would be filing a claim against Rao or Rao's employer when he prepared the Notes." (*See* Defendants' Motion *in Limine* Regarding Certain Notes Prepared by Convergys Employee Bill Koopmans, p. 8).

technical personnel examined these documents in September 1999 in the context of their factual investigation and recovery efforts related to the database outage. Again, they did this with no eye toward litigation against Defendants, at a time months or even years prior to the contemplation of litigation against Defendants.

Ohio courts require a strong showing of malfeasance—or at least gross neglect—before approving an adverse inference relating to spoliation. *Schwaller v. Maguire*, 2003-Ohio-6917 ¶ 24 (Hamilton Cty. 2003). Defendants' arguments fail to even remotely approach a showing of malfeasance or gross neglect by Convergys IMG's technical personnel. Rather, what the undisputed facts demonstrate is that the documents about which Defendants complain were overwritten in the ordinary course of business, at a time when no litigation was contemplated against Defendants. Defendants can certainly cross-examine Plaintiffs' witnesses on why they only preserved Rao's keystroke history. However, Defendants cannot demonstrate that Convergys IMG somehow spoliated evidence. The exclusion of "expert" testimony is manifestly inappropriate.

### III.    CONCLUSION

For all of the foregoing reasons, Plaintiffs respectfully request that the Court deny

Defendants' Motion *in Limine*.

|  |  |
|---|---|
|  | /s/Robert D. Shank |
|  | Grant S. Cowan (Ohio No. 0029667) |
|  | Trial Attorney for Plaintiffs |
| OF COUNSEL | Convergys Information Management |
|  | Group Inc. and Chubb Custom Insurance |
| Robert D. Shank (Ohio No. 0069229) | Company |
| FROST BROWN TODD LLC | 2200 PNC Center |
| 2200 PNC Center | 201 East Fifth Street |
| 201 East Fifth Street | Cincinnati, Ohio  45202 |
| Cincinnati, Ohio  45202 | (513) 651-6745 (direct dial) |
| (513) 651-6800 | (513) 651-6981 (facsimile) |

## CERTIFICATE OF SERVICE

I hereby certify that on April 1, 2004, a copy of the foregoing PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION *IN LIMINE* TO PROHIBIT PLAINTIFFS FROM OFFERING EXPERT TESTIMONY was filed electronically. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system and copies will be mailed via U.S. Mail to those parties who are not served via the Court's electronic filing system.  Parties may access this filing through the Court's system.



/s/Robert D. Shank

CinLibrary/1384435.2